# THE CITY OF CHICAGO *et al.*

## *v.*

## WILLIAM McCOY.

### *Filed at Ottawa January 22, 1891.*

1. CITY ORDINANCES, ETC.—*publication—in the English language only —the statutes and constitution considered.* The act of 1863, amendatory of the charter of the city of Chicago, leaving it to the discretion of the common council whether or not the ordinances, etc., should be published in some newspaper printed in the German language, was, by necessary implication, repealed by the act of 1867, also amendatory of the city charter, which required such publication in a German newspaper.

2. The peremptory requirement in the act of 1867 that publications should be made in a newspaper published in German having the largest daily circulation in the city, was repealed by the general Incorporation law of 1872.

3. Clauses 94 and 96 of the general Incorporation law of 1872, specifying the powers of the city council, are to be read in the light of section 18 of the schedule of the constitution of 1870, which provides that all laws, etc., shall be published in no other than the English language.

4. The matters required by the general City and Village Incorporation act to be published, are of such kind and character that they can not, in view of the constitutional prohibition, be published by a city organized thereunder, at the expense of the tax-payer, in any other than the English language.

5. The word "published," in section 18 of the constitution, which prohibits the publication of laws, etc., in any other than the English language, is used in its ordinary and usual acceptation, and is broad enough to, and does, include publications in newspapers, as well as those in book or pamphlet form.

6. Under the constitutional prohibition (sec. 18 of schedule), a city council has no power to provide, by ordinance or otherwise, for the publication of its ordinances or other proceedings, at the expense of its tax-payers, in any other than the English language, and if it attempts such publication it may be enjoined at the suit of any tax-payer.

7. MUNICIPAL POWERS—*how derived—limitations.* The rule in respect to municipal power is, that unless the power claimed is conferred in express words, or by necessary implication, it does not exist.

8. A city council can legislate only because it is authorized to do so by the State, and the ordinances which it passes are local laws, and

in one sense are laws of the State. Such ordinances are also legislative proceedings, and the acts of the officers of a city, performed by them in pursuance of their duties, are official acts.

9. Costs—*on bill to enjoin improper use of public funds.* Where, in a suit against a city and a newspaper company, the city is enjoined, at the suit of a tax-payer, from making payment out of public funds to the newspaper company in violation of law, it is improper to require the publishing company to pay all the costs. The costs should be taxed against both defendants,—the city as well as the company.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. Tuley, Judge, presiding.

Mr. Alexander F. Stevenson, for the appellant the German-American Publishing Company.

Mr. Jonas Hutchinson, for the city of Chicago *et al.*

Mr. Francis Adams, for the appellee.

Mr. Justice Baker delivered the opinion of the Court:

The city comptroller of Chicago advertised inviting proposals for contracts for the publication in one English and also in one German newspaper, both journals being published at least six times a week, of those matters and things required by law, or any ordinance of the city, to be published in a newspaper. In so doing, the comptroller proceeded in conformity with the provisions of an ordinance of the city passed and approved April 18, 1881. The German-American Publishing Company made a bid in writing, wherein they offered to publish in the German language, in their newspaper, the *Freie Presse*, a newspaper printed wholly in the German language, the matters and things in question, for two dollars per one thousand ems, nonpareil type, said price to include the cost of translation. The *Freie Presse* was the only paper printed in the German language that put in a bid. It afterwards made a written proposal to reduce the price of its bid,

and to publish the city advertisements in German for $1.80 per one thousand ems nonpareil, said price to include cost of translation. Thereupon, on February 25, 1889, the city council accepted the proposal, and ordered the city comptroller to let the contracts for the city printing, in the English language to the *Globe*, and in the German language to the *Freie Presse*, on the terms bid for the printing in the English language, and for the printing in the German language to conform with the proposal of the German-American Publishing Company, to-wit., $1.80 per one thousand ems.

On the 5th day of March, following, the appellee, William McCoy, a citizen, resident and tax-payer of the city, filed this bill of complaint on behalf of himself and all other tax-payers of the city, and made the city of Chicago, the mayor and the comptroller of said city, and the German-American Publishing Company, parties defendant thereto. The bill proceeds upon the ground that the ordinance of April 18, 1881, and the order of February 25, 1889, in so far as they purport to authorize the publication in a German newspaper and in the German language "of those matters and things required by law or any ordinance of the city to be published in a newspaper," are *ultra vires*, and not warranted by either the charter of the city or any law of the State, and that, consequently, the expenditure of the public moneys raised by taxation, in payment for such publication, would be illegal, and an injury to the tax-payers. The prayer of the bill is, that said ordinance and said order, to the extent above indicated, be decreed to be invalid, void and of no effect, and that the city, and its mayor and comptroller, be perpetually enjoined from entering into or executing any contract whatever for the publication in the *Freie Presse*, or in the German language, of those matters and things required by law or any ordinance of the city to be published in a newspaper, and from paying to the German-American Publishing Company any money of said city for any such publication in the German language.

The cause was heard in the circuit court upon the pleadings, bill, answers and replications, and the temporary injunction was dissolved and the bill dismissed. Upon an appeal to the Appellate Court the decree dismissing the bill was reversed, and the cause was remanded to the circuit court, with directions to perpetually enjoin the city, as prayed in the bill; and a. further order was made, that the costs in both the Appellate and circuit courts should be taxed against the German-American Publishing Company alone. Both the German-American Publishing Company and the city of Chicago have appealed from the judgment of the Appellate Court, and have assigned errors.

Prior to May, 1875, the city of Chicago was organized under a special charter. By the act of February 13, 1863, amendatory of the charter, (Private Laws of 1863, p. 53,) it was provided as follows: "The common council, at their council meeting on the first Monday in May, each year, or within not to exceed thirty days thereafter, shall designate one public. newspaper printed in said city, in which shall be published all ordinances and other proceedings and matters required in any case by this act, or by the by-laws and ordinances of the common council, to be published in the corporation newspaper. \* \* \* The common council may also, in its discretion, provide for the publication of said ordinances and other proceedings, or such portion of the same as it may think proper, in some newspaper printed in the German language." By an act of March 9, 1867, (1 Private Laws of 1867, p. 777,) it was provided: "The proceedings, notices and ordinances of said city, and the departments thereof, shall be published in the newspaper printed in the German language having the largest daily circulation in said city, as fully as they are now required to be published in the corporation newspaper: *Provided,* that in no judicial or other proceeding shall the publication in such German paper be called in question, either as to the fact of its publication or as to the correctness thereof." A special act

of March 10, 1869, (1 Private Laws of 1869, p. 334,) made provision for the continuance of the then existing contracts with the corporation and German newspapers for the publication of official proceedings, reports, assessments and other notices until the second Monday in December then next following, and that the common council should then proceed to elect a corporation printer, and designate the German newspaper for the publication of the official proceedings, and the reports, assessments and other notices.

One of the contentions of appellants is, that notwithstanding the fact that in May, 1875, the city became incorporated under the general municipal Incorporation act of April 10, 1872, yet by virtue of section 6 of article 1 of that act the provisions contained in the amended special charter under which the city was previously organized, in respect to publications authorized to be made in German newspapers, still continued in force. The language of said section 6 is: "All laws or parts of laws not inconsistent with the provisions of this act shall continue in force and applicable to any such city or village, the same as if such change of organization had not taken place." The act of March 10, 1869, was merely ancillary and incident to the provisions already contained in the special charter for the newspaper publication of ordinances, etc., and for the purpose of fixing the times for the selection of the corporation printer and designation of the German newspaper, already provided for in said charter. It is unnecessary, therefore, to further consider that act, for the question of its present vitality, so far as the matter now at issue is concerned, is dependent upon the continued vitality of the acts of 1863 and 1867,—one or both.

By the act of 1863 it was left to the discretion of the common council whether or not the ordinances, etc., should be published in some newspaper printed in the German language, and whether or not such publication, if made, should include all or only a portion of the ordinances, etc., required to be

published in the corporation newspaper, and whether or not such publication, if made, should be in the German newspaper having the largest daily circulation in the city, or in some other newspaper printed in the German language. On the contrary, the act of 1867 required that the ordinances, etc., should be published in the newspaper printed in the German language having the largest daily circulation in the city, and that publication thereof should be made therein as fully as they were required to be published in the corporation newspaper. The mandate to publish all, and in a designated paper, was wholly inconsistent with a discretionary power to publish all or none, or such portion as the council might think proper, and in such German paper as the council saw fit to choose. In respect to publications in a German newspaper, the act of 1867 was a repeal of the act of 1863 by necessary implication.

Is the act of 1867 inconsistent with and repealed by the general Incorporation act of 1872? The act of 1872 requires the following matters to be published,—*i. e.*, all ordinances imposing any fine, penalty, imprisonment or forfeiture; all ordinances making any appropriation; election notices; the annual reports of treasurers and collectors; notices of special assessments to be made; notices of applications for confirmation of the same, and notices by collectors of special assessment warrants in their hands. In respect to all of these, except the last mentioned, the requirement is that the publication shall be made "in a newspaper" or "in some newspaper," and in respect to notices of special assessment warrants the provision is that they shall be published "in one or more newspapers." Publication "in a newspaper," or "in some newspaper," and a discretionary power to make publication "in one or more newspapers," are all repugnant to a peremptory mandate to make publication in two newspapers, one English and the other German. So, also, the peremptory requirement in the act of 1867, that publication should be made in the newspaper printed in the German language hav-

ing the largest daily circulation in the city, is inconsistent with the provision in the ninety-fourth clause of section 1, article 5, of the act of 1872, that all printing needed for the use of the city shall be furnished by contract, let to the lowest bidder. The act of 1867 is, by implication, repealed by the act of 1872. We think that there is no just ground for the claim that any of the provisions of the special charter authorizing the publishing of ordinances, etc., in a newspaper printed in the German language, are still in force.

In the general Municipal Corporation act, the ninety-fourth and ninety-sixth clauses of the section specifying the powers of the city council are as follows : "To provide, by ordinance, that all the paper, printing, stationery, blanks, fuel, and all the supplies needed for the use of the city, shall be furnished by contract, let to the lowest bidder," and "to pass all ordinances, rules, and make all regulations proper or necessary to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper." One of the contentions of appellants is, that since by said clause 94 the city council is given unlimited power to print, which includes authority to determine as to what printing is necessary for the welfare of the city and citizens, or for the protection of the property of the tax-payers, and full power to expend money for printing, advertising and publishing, and since by said clause 96 it is given plenary power to pass all ordinances and make all regulations proper or necessary to carry the first mentioned power into effect, it follows that there is ample authority vested in the city to sustain the ordinance of April 18, 1881, and the order of February 25, 1889. Said clauses 94 and 96 must be read in the light of section 18 of the schedule to the constitution of 1870, which provides : "All laws of the State of Illinois, and all official writings, and the executive, legislative and judicial proceedings, shall be conducted, preserved and published in no other than the English language." It does not militate

against the continuing vitality of this section 18 that it is found in the schedule and not in the body of the constitution, for a schedule to a constitution forms a part of such constitution, and is of equal authority therewith. The provisions most usually found in schedules are of a temporary character, and for the purpose of preventing inconvenience and confusion upon the constitution taking effect; but from the very nature of the provision in question it is permanent in its scope and operation. It is from that a similar section was incorporated in the constitution of 1848; but in the case of *German Printing and Publishing Co.* v. *Illinois Staats Zeitung Co.* 55 Ill. 127, no question in regard to the interpretation to be put upon it was either raised or decided.

A legislative construction placed upon a doubtful constitutional provision is entitled to weight and consideration, but the enactment of the special acts of 1863, 1867 and 1869, hereinbefore considered, in the days of almost unlimited special and local legislation, is not such an interpretation of the unambiguous constitutional mandate, that all laws, official writings and legislative proceedings shall be published in no other than the English language, as can properly be given a controlling effect. A city council can legislate only because it is authorized so to do by the State, and the ordinances which it passes are local laws, and, in one sense, laws of the State, and they are within the spirit and intent of the constitutional inhibition. Such ordinances are also "legislative proceedings." The city treasurer, city collector and city clerk are officers. (Const. of 1870, art. 5, sec. 24; Rev. Stat. 1874, chap. 24, art. 6, secs. 1, 2; *Wilcox et al.* v. *The People ex rel.* 90 Ill. 186.) The acts performed by them in pursuance of their duties as such officers are official acts. The reports of the city treasurer and city collector, and the notices given by the city clerk of elections, and by the city collector of warrants in his hands for collection, are all "official writings." The notices required to be given in respect to special assessments to be made are

a part of the "judicial proceedings" provided for in the general Incorporation act. And so, the matters required by the general City and Village Corporations act to be published are of such kind and character that they can not, in view of the constitutional inhibition, be published by the city, at the expense of the tax-payers, in any other than the English language.

It is insisted that the word "published," as used in said section of the constitution, is restricted in its application to publications in book or pamphlet form. The word "published" is broad enough to include, and in its ordinary and usual acceptation does include, publications in newspapers. Where the words of a constitution or statute are clear and unambiguous, and their interpretation in their commonly received sense leads to a reasonable and probably intended conclusion, then such constitution or statute should be read and understood according to the natural and most obvious import of the language, without resorting to a subtle and forced construction, for the purpose of either limiting or extending their operation. (*Beardstown* v. *Virginia*, 76 Ill. 34.) The constitutional provision in question contemplates publications in newspapers as well as publications in books and pamphlets. The legislature has construed the word "published," found in section 2 of article 14 of the same constitution, as authorizing and contemplating publications in newspapers. Starr & Curtis' Stat. chap. 7 a, sec. 2.

Our conclusion is, that there is no sufficient ground for the claim that the aforesaid clauses 94 and 96 of the municipal Incorporation act donate to the city power to publish, at the public expense, the matters covered by the ordinance of April 18, 1881, and the order of February 25, 1889, in a German newspaper and in the German language.

It seems to be suggested by counsel, that by virtue of some inherent power vested in the city, it has the right, for the benefit and protection of its citizens and tax-payers and their property, to provide for the publication of the matters in ques-

tion in a newspaper printed in the German language. The settled rule in respect to municipal power is, that unless the power claimed is conferred in express words or by necessary implication, it does not exist. In respect to the matter now at issue, the fact of the constitutional prohibition above discussed effectually prevents any conclusion that the city is invested with any such right or power. If the special act of 1863 had not been repealed by that of 1867, and that of 1867 by the organization of the city under the general act of 1872, said section 18 of the schedule to the constitution would necessarily render both of said special acts invalid. As matter of course, the inhibition of the constitution is a restraint upon official conduct, only. It is entirely competent and proper for newspapers, printed in any language whatever, to print and publish, but not officially and at the expense of the public, any laws, ordinances, official writings, or executive, legislative or judicial proceedings.

The Appellate Court properly reversed the decree of the circuit court, and properly directed that a decree for a perpetual injunction should be entered. But it may be, as suggested by counsel, that there are moneys due or claimed to be due from the city to the German-American Publishing Company, for publications made under a previous contract. If so, such matter was not within the scope of the facts alleged in the bill. The directions given by the Appellate Court are, therefore, modified, so as to direct a perpetual injunction in respect to the execution of the proposed contract and the payment of moneys thereunder, or for publications made under the order of February 25, 1889, only. We think that the directions should also be so modified as that the costs of the circuit court, the Appellate Court and this court should all be taxed against the city of Chicago as well as against the German-American Publishing Company.

*Judgment modified.*

Mr. JUSTICE CRAIG, dissenting.