THE STATE EX REL. GOEBEL, Appellant, vs. CHAMBERLAIN, County Treasurer, Respondent.

*April 16 — May 3, 1898.*

*Delinquent tax list, publication of in English newspaper.*

Although secs. 1130, 1131, S. & B. Ann. Stats., merely require that the delinquent tax list shall be published in a newspaper which has been published continuously for two years, and though the county board are authorized by sec. 675 to order its publication in a newspaper published in any other than the English language, when they shall deem it necessary, provided twenty-five per cent. of the population of that county are of a nationality not speaking the English language and have a newspaper published in their own language, yet that statute required such notices also to be published in a newspaper "published in the English language as provided by law;" and in the absence of any order by the county board, the publication of such list in a German newspaper, though in the English language, is not legal, and such paper, though making the lowest bid, is not entitled to the contract. *Wakeley v. Nicholas,* 16 Wis. 588, and *Kellogg v. Oshkosh,* 14 Wis. 623, distinguished.

APPEAL from an order of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This is an appeal by *Edward Goebel* from an order of the circuit court for Langlade county denying the writ of *mandamus* prayed for in said relator's petition.

The petition stated, in substance, that said relator was the proprietor, editor, and publisher of the Antigo Herold, a German weekly newspaper printed and published at the city of Antigo, in Langlade county; that said paper had been regularly and continuously published in said county for more than six years then last past, and still continued to be so published; that March 25, 1897, the number of descriptions in the list of lands to be advertised for sale by the county treasurer for the year 1896 for taxes exceeded 4,000; that the respondent, *S. W. Chamberlain,* then county treasurer

of said county and acting as such, March 25, 1897, delivered to and left with the relator a printed notice, notifying him, in substance, that the number of descriptions of lands to be advertised for sale for the nonpayment of taxes for the year 1896 exceeded 4,000, and that he would let by contract the publication of the list to the lowest bidder, at his office in the court house in the city of Antigo, in said county, on April 6, 1897, at 10 o'clock in the forenoon, and that all publishers proposing to bid on such publication must comply strictly with the provisions of law concerning the same, and that no bids would be considered which failed so to do; that on the same day said *Chamberlain* delivered to and left with each and all the editors and publishers of papers in said county qualified to publish said tax list a similar notice; that thereafter, and prior to the time of opening said bids and letting of the contract, the said relator, as editor and publisher of the Antigo Herold, delivered to and left with the said county treasurer his bid, duly signed and sealed as by law required, agreeing to publish said list in the English language in said Antigo Herold for the sum of eighteen cents for each and every description in said list contained, and at the same time, accompanying said bid, was said relator's bond for $5,000, duly executed as provided by statute, conditioned, among other things, that the work would be properly performed, and signed by five sureties, who each justified in the sum of $2,000.

It was further alleged that the only other bid for said work was one made by John A. Ogden, editor and publisher of the Antigo Republican, who agreed to print and publish said list for twenty-five cents for each and every description therein, and these were the only bids submitted to said county treasurer; that, although the bid of the relator was the lowest, said county treasurer, *S. W. Chamberlain*, refused to act upon and accept said bid, and refused to award the publishing of said list to the relator, solely for the reason

that the said Antigo Herold was a newspaper printed in the German language, and publishing said list in the English language in said paper would not be a legal publication; and that he still refused to award said relator said contract. Wherefore he prayed that a peremptory writ of *mandamus* might issue out of, and under the seal of, the court, requiring and commanding said *S. W. Chamberlain,* county treasurer aforesaid, to award said contract to the relator in accordance with his said bid.

An alternative writ was issued as prayed, to which the respondent, in answer, alleged that the Antigo Herold was a newspaper printed and published in the German language, and not, in law, in the absence of the proper action of the county board of said county, authorized to bid, contract for, or publish said list, and prayed that the peremptory writ asked for be denied. Said matter coming on to be heard by the court upon argument, the court made an order that the writ prayed for be denied, without costs, from which order the relator appealed.

*T. W. Hogan,* for the appellant.

For the respondent the cause was submitted on the brief of *Jno. E. Martin.*

PINNEY, J. The question to be determined is whether, under the statute, a delinquent county tax list can be lawfully published in a German newspaper, in the English language, if the newspaper is in every other respect lawfully qualified as a means of making such publication.

Sec. 1130, S. & B. Ann. Stats., requires the county treasurer, on the first Monday of April in each year, to "make out a statement of all lands upon which the taxes have been returned as delinquent and which then remain unpaid, except public lands held on contract and lands mortgaged to the state, containing a brief description thereof, with an accompanying notice stating that so much of each tract or

parcel of land described in said statement as may be neces-
sary therefor, will on the third Tuesday of May next there-
after, and the next succeeding days, be sold by him at public
auction, at some public place, naming the same, at the seat
of justice of the county, for the payment of taxes, interest
and charges thereon; and if in any county no seat of justice
shall be established, then at such public place therein as he
may select; and cause such statement and notice to be pub-
lished in *a newspaper* printed in his county, if there be one,
. . . which statement and notice shall in all cases be pub-
lished once in each week, for four successive weeks prior to
said third Tuesday of May; . . . but it shall be unlawful
for any county treasurer to publish such statement and notice
in any newspaper in his county that has not been regularly
and continuously published in such county once in each cal-
endar week for at least two years immediately before the
date of such notice, if there be a newspaper which has been
so published in such county;" and any county treasurer
violating the provisions of this section is subject to a speci-
fied forfeiture. The statute thus defines, in one respect,
what shall constitute a legal newspaper for the publication
of such statement and notice.

Sec. 1131 provides that "in every county where the num-
ber of the descriptions in the list of lands to be adver-
tised for sale for the nonpayment of taxes by the county
treasurer shall exceed four thousand, the county treasurer
shall let by contract the publication of such list to the low-
est bidder, upon a notice written or printed, to be delivered
to and left with the publisher or one of the publishers of
each newspaper in his county, at least ten days prior to the
time at which such contract shall be let; but no such con-
tract shall be made to publish such list in any newspaper
which has not been regularly and continuously published
once in each week in such county for at least two years prior
to the time at which such publication shall be by law re-

quired to be made, unless there be no such newspaper so published in such county." It will be observed that the statute uses the words "*a newspaper*," without limiting it to any particular kind of newspaper, either German or English. The only express qualification is that the paper must have been regularly and continuously published once in each week in such county for at least two years prior.

By sec. 675 it is provided that "the county board may order public notices relating to tax sales, redemption and other affairs of the county, to be published in a newspaper, printed in any other than the English language, to be designated in such order, whenever they *shall deem it necessary* for the better information of the inhabitants thereof, *and it shall appear* from the last previous census that one fourth or more of the adult population of such county are of a nationality not speaking the English language, and that there shall have been a newspaper published therein continuously for one year or more in the language spoken by such nationality; provided, that all such notices shall *also* be published in a newspaper published in the English language *as provided by law*. The compensation for all such publications shall be paid by the county ordering the same, and shall be the same as that prescribed by law for publication in the English language; and no extra charge shall be allowed for translation in any case."

The power of the county board to make the order is discretionary, and it must appear from the last previous census that one fourth or more of the adult population of such county are of a nationality not speaking the English language, and that there shall have been a newspaper published therein for one year or more in the language spoken by such nationality; and it is also made necessary that "all such notices shall also be published in a newspaper published in the English language, as provided by law." Sec. 1130,

S. & B. Ann. Stats., authorizes the county treasurer to use his discretion in selecting the newspaper in which he shall publish the delinquent tax list if the number of descriptions is less than 4,000, but requires him to let the printing of it to the lowest bidder when it exceeds 4,000 descriptions. He has in such case no discretion. He is required to notify each newspaper in the county to file bids; that is to say, each newspaper qualified to make such publication. The statute, when construed in the light of the common law, invites bids from only qualified newspapers, and a paper printed in the German language is not within the statute.

In *Kellogg v. Oshkosh*, 14 Wis. 623, the common council, under the charter (sec. 9, subch. III, ch. 133, P. & L. Laws of 1856), had power to designate a newspaper *printed in the German language* as the official paper of the city; and it was held that the notice required by sec. 9, subch. VIII, and published in such paper, was valid, if also published in the English language. Also, in *Wakeley v. Nicholas*, 16 Wis. 588, it was held that the publication of a summons in a German newspaper, in the English language, was a legal publication. In that case the person to be served was an American, and the officer making the order for its publication directed that it be published in a German newspaper, to wit, the Wisconsin Zeitung, published at Madison, and the summons was published therein in the English language. The court held it was a sufficient publication, and the officer granting the order had a discretion to determine in what paper it should be published. DIXON, C. J., rendering the opinion of the court, says: " Upon affidavit, as prescribed by statute, the court, or a judge thereof, or a court commissioner, may grant an order that the service of the summons be made by publication. R. S. [1858] ch. 124, sec. 10. If the circuit judge who granted the order in this case, in the exercise of the *discretion* vested in him by the statute, di-

rected publication in a German, instead of an English, newspaper, as being most likely to give notice to the person intended to be served, we see no legal objection to it."

The present case is clearly distinguishable from the cases cited, in that in this case the county treasurer had no power or discretion to receive relator's bid, or award him a contract under it. No authority had been given to him by the county board for that purpose under sec. 675, R. S. 1878. The English language is the language of the country, to be used in all legal and official notifications or proceedings, in the absence of any statute authority to the contrary. It does not appear that the county board had considered or acted upon the subject. We hold that this section is decisive against the validity of the relator's claim, under his bid, to the contract. The publication of said list in the English language in a German paper would not, for the reasons stated, in the absence of such authority, be a legal publication; and the county treasurer rightfully refused to award to the relator a contract for that purpose, upon his bid.

It follows from these views that the order appealed from, denying the writ of *mandamus* prayed for, is correct and must be affirmed.

*By the Court.*— The order of the circuit court appealed from is affirmed.