[File No. 6168.]

ELIZABETH REUTER, Appellant, v. DICKINSON BUILDING & LOAN ASSOCIATION of Dickinson, N. D., a Corporation, Respondent.

(249 N. W. 778, — A.L.R. —.)

674

Opinion filed July 29, 1933.

*G. R. Brainard,* for appellant.

*W. C. Crawford,* for respondent.

CHRISTIANSON, J.   This controversy involves the validity of a mort-

gage foreclosure by advertisement. The question is whether the notice of foreclosure sale was published as required by law. The notice of mortgage foreclosure sale was published in a newspaper printed in the German language and the question is whether, under the laws of this state, such notice may be published in such newspaper. There is no dispute as to the facts. The material facts are stipulated. The several issues of the publication in which the notice of foreclosure sale was printed were admitted in evidence by stipulation. An examination of the same discloses that all news items, and all editorials are printed in the German language. The only part of the publication that is printed in the English language is the notice of foreclosure sale in question here, some other legal notices and some stereotyped advertisements. The amount of space in the publication actually printed in the English language is about ten and one-half per cent of the total space of the paper and that eighty-nine and one-half per cent of the printed matter in such paper is in the German language.

The statute relating to the publication of a notice of mortgage foreclosure sale reads as follows: "Notice that the mortgage will be foreclosed by a sale of the mortgaged premises or some part thereof must be given by publishing the same six times, once in each week for six successive weeks, in a newspaper of the county where the premises intended to be sold, or some part thereof, are situated, if there is one, and if not, then in some newspaper published at the seat of government." Comp. Laws 1913, § 8079.

This section, so far as material here, has been a part of our statutory law since territorial days. It is found as § 600 of the Revised Codes of the Territory of Dakota for 1877. The provision that "notice that the mortgage will be foreclosed by a sale of the mortgaged premises or some part thereof must be given by publishing the same . . . in a newspaper of the county where the premises intended to be sold or some part thereof, are situated, if there is one," has remained without change during the entire history of the state. In 1890, however, the legislative assembly of the state enacted a statute prescribing the qualifications of a legal newspaper. Laws 1890, chap. 120. Among the qualifications prescribed by such statute was that such newspaper must have been established for a certain length of time, that it must have at least a designated number of subscribers, must be of a certain

size and that a certain amount of the printed matter must be devoted to reading or news matter. While later certain changes were made in this statute, in general the principle adopted and the qualifications thus prescribed were retained until 1919. The legislative assembly which convened that year, however, provided for the designation of one official newspaper in each county; and required, among other things, that all notices of real estate mortgage foreclosure sales by advertisements be published in such newspaper. Laws 1919, chaps. 187, 188. It was provided that at the general election in 1920 and at each general election thereafter, an official newspaper should be chosen in each county by the electors thereof. Laws 1919, chap. 187. This law, however, was amended by a statute proposed by initiative petition and enacted by the electors of the state at the general election in 1920. Laws 1921, p. 256. The effect of the initiative enactment of 1920 was to eliminate the requirement that legal notices in actions and proceedings and notices of foreclosure of real estate mortgages by advertisement be published in the official newspaper. The legislative assembly in 1923 provided that newspapers, desiring to become the official newspaper of a county, submit their candidacies to the voters at the primary election and that the two newspapers receiving the highest number of votes should be deemed nominated and placed upon the general election ballot; and that the one receiving the highest number of votes at the general election should be declared elected the official newspaper. Laws 1923, chap. 211. The legislative assembly in 1925 amended this latter statute so as to prescribe as qualifications for a newspaper desiring to become a candidate for official newspaper that it must be "a non-sectarian newspaper within the county, printed at least three quarters in English, which has been established for at least one year and has been admitted to the United States mails and has complied with the requirements of federal laws governing second class matter for at least a period of one year, and at least one page of which newspaper is actually printed at the place designated in the date line thereof, and has been in regular and continuous circulation during said period of one year with a bona fide subscription list of at least 150 regular subscribers within the county of its location." Laws 1925, chap. 172, § 3.

It is the contention of the appellant that a notice of foreclosure of a

real estate mortgage by advertisement is invalid unless it is published in a newspaper having the qualifications prescribed by § 3 chapter 172, Laws 1925. In other words, it is the contention of the appellant that the provisions of that section govern as regards the qualifications of a "legal" newspaper as well as the qualifications of a newspaper that may be chosen an official newspaper of a county. The respondent, on the other hand, contends that § 3, chapter 172, Laws 1925, applies only to "official" newspapers and that it has no application to, and does not purport to prescribe the qualifications of, a newspaper in which notices of real estate mortgage foreclosure sales by advertisement may be published. We find it unnecessary to determine which of these contentions is correct. If the appellant is correct, then clearly the newspaper in question here was not qualified to publish the notice in question as it is conceded that it was not "printed at least three quarters in English." On the other hand, if this statute does not apply, then we are all agreed that the newspaper in question here was equally disqualified, as under the laws of this state there is no authorization, either express or implied, for the publication of a legal notice in any newspaper other than one published in the English language. Our laws, both constitutional and statutory abound with provisions requiring certain matters to be published. But, so far as we can ascertain, there is no provision in our laws now, nor has there at any time been any provision, to the effect that any notice or statement required to be published shall be published in the English language. Yet it has been accepted as self-evident that where the laws of our state require a notice or statement to be published that the publication must be made in the English language. In short, when our laws require certain notices or matters to be published, although nothing is said as to the language in which the publication is to be made, they have been construed as necessarily implying that the publication must be made in the English language. Respondent's counsel concedes this to be true. He concedes that where our laws require any notice or statement to be published that in the absence of any express direction to the contrary it was intended that the publication should be made in the English language. But, he asserts that the implication goes no farther and that if the notice or matter required to be published is printed in the English language it may be published in a newspaper printed in a foreign language. In our opinion this conten-

tion is not well founded. While the statutes prescribing the qualifications of a newspaper, either legal or official, say nothing about the language in which the newspaper must be published, we are all agreed that these statutes clearly imply that a newspaper, in order to be eligible, either as an official or legal newspaper, must be published in the English language. The legislative enactment of 1925 constituted a recognition of this established policy and provided in effect that a newspaper published in English may also devote a certain amount of its space, but in no event more than one-fourth thereof, to matters printed in some language other than English. We are of the opinion that under our laws a newspaper, in order to be qualified either as a legal or official newspaper, must be an English newspaper,—a newspaper published in the English language,—and if it devotes some of its space to matter printed in a foreign language that matter must be subordinate to that part of the publication printed in English so that notwithstanding the matter printed in the foreign language, the publication does nevertheless actually remain an English publication.

The various authorities called to our attention by respondent's counsel afford little support for its contention here.

The decision on which the respondent places especial reliance is that of the Supreme Court of Wisconsin in Hyman v. Susemihl, 137 Wis. 296, 118 N. W. 837. Our attention is directed particularly to the following portion of the opinion: "This court has decided that, where a statute directs certain acts and proceedings of city councils to be published in a newspaper, the requirement of the statute is fulfilled by making the publication in a newspaper printed in a foreign language, provided such official act or proceeding is printed in such paper in the English language. Kellogg v. Oshkosh, 14 Wis. 623. It has also been held that the publication of a summons, under a statute authorizing its publication in a newspaper most likely to give notice to the defendant might be made in a paper printed in a foreign language, provided the publication of the summons was made in the English language. Wakeley v. Nicholas, 16 Wis. 588. The utmost that has been decided in the cases referred to is that where a statute either authorizes or directs a publication to be made in a newspaper, and is silent as to the language in which such paper must be printed, publication may be made in a newspaper habitually printed in a foreign language, provided the pub-

lication authorized or directed is made in the English language." 137 Wis. 300.

Kellogg v. Oshkosh, 14 Wis. 624, involved the question of the power of the common council of the city of Oshkosh to designate a newspaper printed in the German language as the official newspaper of the city and the publication of a certain notice in a tax proceeding in such newspaper. The court held that under the statute applicable it was competent for the common council "to designate a newspaper published in the German language as the official newspaper of the city, provided the publication was also made in the English language." 14 Wis. 628. Apparently, however, the notice was also published in an English newspaper as later in the opinion it is said: "But if the publication in the Deutsche Zeitung had been defective, it was clearly cured by that in the Courier." 14 Wis. 629.

Wakeley v. Nicholas, 16 Wis. 588, involved the publication of a summons. The statute provided that upon a prescribed affidavit the court or a judge thereof, or a court commissioner, might grant an order that service of the summons be made by publication. It further provided: "The order shall direct the publication to be made in one newspaper, to be designated as most likely to give notice to the person to be served, and for such time as shall be deemed reasonable, not less than once a week for six weeks, etc." 16 Wis. 592.

In sustaining the publication of the summons made in a newspaper published in the German language the court said: "If the circuit judge who granted the order in this case, in the exercise of the discretion vested in him by the statute, directed publication in a German instead of an English newspaper, *as being most likely to give notice to the person intended to be served,* we see no legal objection to it. Kellogg v. Oshkosh, 14 Wis. 624. The publication was in the English, not the German language, so that no exception can be taken to it on that ground." 16 Wis. 592.

In State ex rel. Goebel v. Chamberlain, 99 Wis. 503, 75 N. W. 62, 40 L.R.A. 843, the Supreme Court of Wisconsin had occasion to review and distinguish these two prior decisions. In that case it was sought by writ of mandamus to compel the county treasurer to publish the delinquent tax list of the county in a newspaper published in the German language. The statute required that the contract for publica-

tion of the tax list be let to the lowest bidder. It was undisputed that the newspaper in question was the lowest bidder, also, that it was in every other respect lawfully qualified, unless it was disqualified because it was printed in the German language. As said by the Supreme Court of Wisconsin: "The question to be determined is whether, under the statute, a delinquent county tax list can be lawfully published in a German newspaper, in the English language, if the newspaper is in every other respect lawfully qualified as a means of making such publication." 99 Wis. 505.

The court, after setting out in its opinion the facts relating to the publication of the delinquent tax list, said: "It will be observed that the statute uses the words 'a newspaper,' without limiting it to any particular kind of newspaper, either German or English. The only express qualification is that the paper must have been regularly and continuously published once in each week in such county for at least two years prior. By § 675 it is provided that the county board may order public notices relating to tax sales, redemption, and other affairs of the county, to be published in a newspaper, printed in any other than the English language, to be designated in such order, whenever they shall deem it necessary for the better information of the inhabitants thereof, and it shall appear from the last previous census that one fourth or more of the adult population of such county are of a nationality not speaking the English language, and that there shall have been a newspaper published therein continuously for one year or more in the language spoken by such nationality; provided, that all such notices shall also be published in a newspaper published in the English language as provided by law." 99 Wis. 507.

The court pointed out that as no authority had been given to the county treasurer by the county board under the statute authorizing publication in a newspaper printed in any other than the English language, he possessed no such power and that, consequently, a newspaper printed in the German language was not a newspaper qualified for publishing the tax list. The decision of the court was epitomized in the following words:

"The English language is the language of the country, to be used in all legal and official notifications or proceedings, in the absence of any statute authority to the contrary. It does not appear that the county

board had considered or acted upon the subject. . . . The publication of said list in the English language in a German paper would not, for the reasons stated, in the absence of such authority, be a legal publication." 99 Wis. 509.

Hyman v. Susemihl, supra, was a taxpayer's suit brought to enjoin the Board of County Commissioners from paying a claim for publishing the proceedings of the Board in the German language. In its decision in that case the Wisconsin Supreme Court held that there was no authority to make the publication in a foreign language; no right to make a contract for such publication, and, consequently, no right to expend public funds in payment of such publication. Some of the statutory provisions considered in State ex rel. Goebel v. Chamberlain, supra, were considered in Hyman v. Susemihl, supra. The statute, under which the publication involved in the latter case was made, provided: "The county board of supervisors in every county in the State of Wisconsin, shall, by ordinance or resolution, provide for one publication of a certified copy of all its proceedings had at any meeting, . . . in one or more newspapers published and having a general circulation therein." 137 Wis. 298.

After reviewing its former decisions relating to publications of notices in a newspaper published in a foreign language the Wisconsin court said:

"Instead of these decisions sustaining the view of the appellants, the inference therefrom is strong that publication in a foreign language would not meet such a statutory requirement as the one under consideration. There is no warrant, aside from that contained in § 675, (this section authorized the county board in counties having a large population not speaking the English language to provide for publication in the language spoken by such foreign population), which we have been able to discover, either in the statutes or in the decisions, for applying any different rule in the case of a discretionary publication than that which appellants concede is applicable to the mandatory one.

"The only other case in this court bearing upon the subject under consideration is State ex rel. Goebel v. Chamberlain, 99 Wis. 503, 75 N. W. 62, 40 L.R.A. 843. In that case the court said: 'The English language is the language of the country, to be used in all legal and official notifications or proceedings, in the absence of any statute author-

ity to the contrary.' Unless this declaration is held to be an incorrect statement of the law, and is overruled, it is manifest that the demurrers in this case were properly overruled." 137 Wis. 301.

Obviously Hyman v. Susemihl, 137 Wis. 296, 118 N. W. 837, supra, does not, nor do any of the Wisconsin decisions, sustain the contentions of the respondent here. Under the rule announced by those decisions the publication of the notice in question here was required to be made in a newspaper printed in the English language. This is also the rule established by the decisions in other jurisdictions. Graham v. King, 50 Mo. 22, 11 Am. Rep. 401; McLean v. Bergner, 80 Mo. 414; Bennett v. Baltimore, 106 Md. 484, 68 Atl. 14, 14 Ann. Cas. 419; Chicago v. McCoy, 136 Ill. 344, 26 N. E. 363, 11 L.R.A. 413; Schaale v. Wasey, 70 Mich. 414, 38 N. W. 317; 20 R. C. L. 204; 46 C. J. 27.

In Graham v. King, 50 Mo. 22, 11 Am. Rep. 401, supra, the court said: "The notice published in the German paper was obviously bad. When notices are to be published in a paper, an English paper is always intended unless it is expressed to be otherwise. The insertion of an English advertisement in a German paper would generally give less publicity to it than if it were published in the German language, as those among whom the paper circulates would not be able to read it in the English tongue. And if it were published in German, then it would be a sealed book to most of those who read and speak English." 50 Mo. 23, 11 Am. Rep. p. 402.

In McLean v. Bergner, 80 Mo. 414, supra, the court held that a notice published in a newspaper, part of which was printed in German, was a valid publication. The court said: "The paper in which the notice in the case before us was published, was an English paper and also a German paper, and the notice was published in English on the English side, and none of the reasons given for holding the notice bad in the case in 50 Mo. supra, apply to it." 80 Mo. p. 419.

What was there said is not applicable to the publication in question here. The newspaper under consideration here was a German newspaper. The advertisements and legal notices printed therein, to which reference has been made, did not transform it into an English newspaper. In short, we have here a question of a legal notice printed in English in a German newspaper.

We are all agreed that the statute relating to the publication of a

notice of mortgage foreclosure sale does not authorize such notice to be published in a newspaper printed in a foreign language. The English language is the official and ordinary language of North Dakota. Throughout the entire history of the Territory of Dakota and the State of North Dakota the English language and it alone has been employed in the official proceedings of all departments of the government. No other language has been recognized as the official language. In these circumstances, a statutory requirement that a notice be published a given number of times in a newspaper means that the newspaper in which publication is made must be one published in the English language.

It follows that the publication in question here was and is invalid. The judgment appealed from is reversed and the cause remanded for further proceedings conformable to law.

NUESSLE, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.