2 Cal.App.2d 690 (1934)
In the Matter of the Petition of L'ITALO-AMERICANO to be Declared a Newspaper of General Circulation. CLETO BARONI, Respondent,
v.
ROY E. ARDERY, Appellant.
Civ. No. 8290. 
California Court of Appeals. Second Appellate District, Division One. 
December 8, 1934.
 Stanley F. Maurseth, Hill, Morgan & Bledsoe and Kenneth K. Wright for Appellant.
 Ernest M. Torchia for Respondent.
 Carroll H. Smith, as Amicus Curiae on Behalf of Appellant.
 Houser, J.
 Under the statutory provisions of sections 4458 to 4465, inclusive, of the Political Code, which relate to what may be termed substantive law, as well as procedure, in connection with publications in newspapers required to be given or made respectively by state, county, city or other officers, a newspaper known as "L'Italo-Americano" petitioned the superior court for its order by which, if granted, *691 said newspaper would be adjudged a newspaper of general circulation, as defined in section 4460 of the Political Code. To such petition a contest was filed by appellant herein. From a decree by the trial court in favor of the petitioner, an appeal has been taken to this court.
 By section 4460 of the Political Code a newspaper of general circulation is thus defined:
 "A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription-list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement. A newspaper devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, race, or denomination, or for any number of such classes, professions, trades, callings, races or denominations when the avowed purpose is to entertain or instruct such classes, is not a newspaper of general circulation."
 For present purposes only, without being so conceded or decided, it may be assumed that, as far as concerns the Italian subscribers to the newspaper, generally speaking the newspaper met the statutory requirements, and that, excepting for the fact that it was published almost entirely in the Italian language, it was entitled to the order or judgment made by the superior court. In that regard, it is admitted that all but a single page of the newspaper was printed in the Italian language, and that ordinarily, as set forth in appellant's brief herein, such single page "contains more or less stereotyped matter, including lessons in Italian, publicity matters from the moving picture studios and some articles on history, together with school notes. The school notes relate more or less to matters affecting the Italian people. There is no attempt to publish general news in this English section, and it was not the purpose of the publishers, in printing the English section, to advise the English-speaking people of the news of the day. Sometimes editorials are carried in the English section, but in general the matters appearing in the English section are matters *692 referring to the schools or concerning people of the moving picture colony."
 On the hearing of the petition, the editor of the newspaper testified: "We do not have as our purpose in printing the English section, telling the English-speaking people the news of the day. Practically all of the news of the day that we publish is published in Italian. I know of some of our subscribers who do not speak or write Italian. I could hardly say as to how many. I know personally of four or five who do not speak Italian but who subscribe to the newspaper. These are not advertisers in the newspaper. All of our advertisements are in Italian. It was our purpose when we established this newspaper to have a vehicle for disseminating news among the Italian people, and we do not as the main purpose expect to have it as a medium for the disseminating of general news to the English-speaking or Spanish-speaking or German-speaking people. In general we try to get the general news of all the world, but we give a little more emphasis upon matters concerning Italy than the rest of the news. We thought that the people who would subscribe to our newspaper would be more interested in the matters affecting the Italian people. It was not only our purpose in printing the page in English to educate the Italian people in the English language, but also to have a page dedicated to some of the Italians and Americans that we have as subscribers. We have over 1000 subscribers."
 [1] The limited question, then, that is submitted for determination by this court is whether a newspaper published in a foreign language can be said to be of "general circulation" within the meaning and intent of section 4460 of the Political Code, section 24 of article IV of the Constitution of this state, and the several statutes relating to publications generally, when it appears that such foreign newspaper contains but a single page printed in English of miscellaneous matter not devoted to the "dissemination of local or telegraphic news and intelligence of a general character".
 The only case to which attention has been directed that deals with such a situation, decided by either of the appellate tribunals of this state, is that of Richardson v. Tobin, 45 Cal. 30, wherein, without any particular discussion of the *693 question here under consideration, it was held that: "Where a statute requires a notice to be published in a daily newspaper, but does not specify the particular language in which it must be published, a publication in a German newspaper, but in the English language, is sufficient." (Syllabus.)
 In other jurisdictions, to the same effect, see Wakeley v. Nicholas, 16 Wis. 588, 612; John v. Connell, 64 Neb. 233 [89 N.W. 806]; also Id., 71 Neb. 10 [98 N.W. 457].
 In Alfonso v. Alfonso, 99 Misc. 550, 165 N.Y. Supp. 1937, it was held that the publication of a summons in Italian in an Italian newspaper was ineffective, even "though both parties to the action were Italian". Nevertheless it was therein said that: "It may be that the justice, in making the order of publication, had the discretion to designate this foreign language newspaper as one 'most likely to give notice to the defendant', but the publication should have been in English."
 On the other hand, in none of the cited cases in either of the other jurisdictions does it appear that the decision therein was made in the light of the provisions of a special statute that contained requirements such as are provided by section 4458 to section 4465, inclusive, of the Political Code of this state; and in that connection it should be specially noted that although the case of Richardson v. Tobin, 45 Cal. 30, was decided by the Supreme Court of this state in 1872, it was not until the year 1903 that the several special statutes that particularly relate to the question here at issue, and to which statutes attention hereinbefore has been directed, were enacted.
 By section 24 of article IV of the Constitution of this state, in part it is provided that, "... all laws of the state of California, Band all official writings, and the executive, legislative, and judicial proceedings, shall be conducted, preserved, and published in no other than the English language".
 And as a further indication of general legislative intent with reference to the language in which the affairs of the state should be conducted, it may not be amiss to note that section 3.40 of the School Code contains a provision by which it is declared that "all schools must be taught in the English language". *694
 As far as may be pertinent to the question here under consideration, in substance section 4458 of the Political Code provides that "whenever any publication, or notice by publication, or official advertising is required to be given or made", it shall be done "in a newspaper of general circulation"; and by section 4460 of the Political Code such a newspaper is defined as hereinbefore has been set forth. That the purpose of the several statutes to which reference hereinbefore has been had is to require "the publication of legal notices to be published in a newspaper which would reach the general reading public, and which would consequently give notice to the public generally", is attested by practically every decision that has been written upon that subject in this state. As is said in In re Herman, 183 Cal. 153, 164 [191 P. 934]: "By the term, 'a newspaper of general circulation', the legislature had in view publications to which the general public would resort in order to be informed of the news and intelligence of the day, editorial opinion, and advertisements, and thereby to render it probable that the 'notices or official advertising' would be brought to the attention of the general public." (See, also, In re David, 98 Cal.App. 69 [276 P. 419]; Application of Monrovia Evening Post, 199 Cal. 263 [248 P. 1017]; and authorities respectively there cited.
 Practically identical with the language contained in section 24 of article IV of the Constitution of this state, to which attention hereinbefore has been directed, is the provision in the Constitution of the state of Illinois. (Sec. 18 of the Schedule of the Constitution of 1870.) And in the case of Perkins v. Board of Commissioners, etc., 271 Ill. 449 [111 N.E. 580, 590, Ann. Cas. 1917A, 27], in determining the effect of a publication in English of a city ordinance, in a German newspaper, it was held that such publication legally was insufficient. In part, the court there said: "A notice or ordinance published in the English language in a newspaper printed in a foreign language cannot be said to be 'published', in the sense in which that word is used in the Constitution and laws of this state. Ordinarily such publications are taken and read only by those who understand and read the language in which the publications are printed and who do not readily understand and read the English language. ..." *695
 Also to like effect is another case in the same state, to wit, People v. Day, 277 Ill. 543 [115 N.E. 732], wherein it appears that an "appropriation bill" was published in a newspaper printed in German, although the appropriation bill itself was printed in the English language. In the body of the opinion rendered by the court it was held that "the circulation of such a paper was necessarily limited, in the main, to persons reading the German language, and that sort of publication is not a compliance with section 18 of the Schedule of the Constitution, nor with the statute providing for publication to furnish information to the citizens generally".
 In Conners v. City of Lowell, 209 Mass. 119 [95 N.E. 412, Ann. Cas. 1912B, 627], a publication of an advertisement of sale was printed in English in a French newspaper: Held (syllabus), that "Under Rev. Laws, c. 13, sec. 1, providing that 'publication of any notice' shall mean the act of printing the notice for a successive number of weeks in a newspaper, etc., an advertisement of a tax sale must be published in English in a newspaper printed in English, and a publication in English of a notice in a French newspaper is insufficient."
 In the course of the opinion in that case it is said:
 "English is the language of this country. This conception is fundamental in the administration of all public affairs. It is an elemental truth, so axiomatic in its nature as to need no supporting authority. It is not declared in the Constitution nor enacted by statute. It is so by the universal customs of our past in colony, province and commonwealth. Apart from the more obvious considerations, there are indications that the English language is that of our institutions in the requirement that no one can be a voter or eligible to office unless able to read the Constitution in English (article 20 of Amendments to Constitution), nor solemnize marriage unless able to read and write in that language. (R. L. c. 151, sec. 30.) Instruction in the English language is required in all public and private schools. (R. L. c. 42, sec. 1; Id., c. 44, sec. 2.) It is plain that a general public notice required by law to be published in a newspaper must be printed in English in an English newspaper. The great weight of authority supports this view." *696
 The same principle is announced in many other authorities, including Schaale v. Wasey, 70 Mich. 414 [38 N.W. 317]; Tylec v. Hyde, 60 Fla. 389 [52 So. 968]; State v. Chamberlain, 99 Wis. 503 [75 N.W. 62, 40 L.R.A. 843]; Graham v. King, 50 Mo. 23 [11 Am. Rep. 401]; Wilson v. Inhabitants of City of Trenton, 56 N. J. L. 469 [29 Atl. 183]; State v. City of Jersey City, 54 N. J. L. 437 [24 Atl. 571]; State v. Mayor of Orange, 54 N. J. L. 111 [22 Atl. 1004, 14 L.R.A. 62]; Bennett et al. v. City of Baltimore, 106 Md. 493 [68 Atl. 14, 14 Ann. Cas. 419].
 It therefore follows that, in accord with the weight of authority, the newspaper here in question may not be said to be one of "general circulation".
 The judgment is reversed.
 Conrey, P. J., and York, J., concurred.