WILLIAM MEDLAND, APPELLEE, V. PHEBE R. E. E. LINTON ET AL., APPELLANTS.

60 249
61 877

FILED MAY 16, 1900. No. 9,209.

1. **County Treasurer: PRIVATE SALE OF REAL ESTATE: FILING OF RETURN WITH CLERK.** A legal private sale of real estate by the county treasurer for delinquent taxes can not be made without the county treasurer first complying with the provisions of section 112, chapter 77, article 1, Compiled Statutes, 1899, by filing with the county clerk a return showing the lands and lots sold at public auction, to whom sold, and for what sums; and an attempted sale of real property for taxes

at private sale without compliance with the provisions of said section invalidates the sale so attempted to be made. *State v. Belmer*, 10 Nebr., 25, adhered to and followed.

2. ———: EXHIBITING RECORD: CERTIFICATE. When the county treasurer undertakes to comply with the provisions of the section mentioned by carrying to the office of the county clerk the records of the treasurer's office, showing sales of real estate for taxes at public sale, and, in the presence of the county clerk, making a certificate on such sales record to the effect that he thereby made a return, and that the list of property as shown on the record has been sold by him at public sale as required by law and signing his name thereto, and then on the same date returning said record with the certificate thereon to the county treasurer's office, *held*, that such acts were not a compliance with the statute, but were a mere subterfuge and evasion of the law, and, in fact, no return at all.

3. Filing: DEFINITION. The law requires such return to be filed in the office of the county clerk. The filing of a paper, as used in the section quoted, means its delivery to the proper officer and the reception of it by him to be kept on file.

4. No Return: No AUTHORITY. Where no proper return of lands sold for taxes at public auction is made, the county treasurer is without authority to dispose of real estate for taxes at private sale, and any sale thus made is invalid.

5. Claimant Under Invalid Sale: RECOVERY. A party claiming under an invalid sale of real estate for taxes can not recover the penalty of twenty per cent interest and attorney's fee, as in the case of a valid tax sale.

6. ———: SUBROGATION TO RIGHTS OF COUNTY: STATUTORY INTEREST ONLY. Where parties claim a lien for taxes paid at such sales, they are subrogated only to the rights of the county, and can recover interest only at the rate provided by statute for delinquent taxes.

7. ———: COUNTY TAXES: CITY TAXES. In this case, *held*, that interest could be recovered on state and county taxes paid at the rate of ten per cent per annum, and on city taxes at the rate of twelve per cent per annum.

8. Unplatted Tract: SPECIAL BENEFITS. An unplatted tract of land within the limits of a city is subject to taxation for special benefits received to pay costs of local improvements, the same as though it were platted into lots and blocks.

9. Special Assessments: PRESUMPTION. In making special assessments for benefits received it is presumed that the authorities arrived at the amounts thereof with reference alone to the benefits accruing to the property assessed, and that the owners

are required to contribute to the cost of the improvement only in proportion as their property is specially benefited thereby.

10. ————: AUTHORITY. The doctrine of special assessments for benefits conferred applies especially to property in cities, and the city of Omaha had the power and authority, given by the legislature, to levy special taxes on the property in controversy for benefits received in opening, extending and grading a street upon which it abutted.

11. Notice. A notice of the sitting of the city council as a board of equalization for the purpose of equalizing a proposed special assessment, correcting errors, hearing complaints, etc., is sufficient if it comply substantially with the provisions of the statute requiring such notice.

12. Definition of Week. A week means a period of time, beginning on Sunday and ending on Saturday following, and where a notice is required to be published beginning the first week of a certain month, *held*, that if it is published first during the first full week of such month beginning on Sunday and ending on Saturday, the requirements of the statutes are satisfied, even though the publication was not made during the first seven days of the month.

13. Levying Special Taxes: RECORD. In levying special taxes or assessments for benefits received, as authorized by section 6, article 9, of the constitution, *held*, that the record must show affirmatively a compliance with all essential conditions to a valid exercise of the taxing power, and any omission of such facts will not be supplied by presumptions. *Smith v. City of Omaha*, 49 Nebr., 883, followed.

14. City Council: SESSION. The city council, acting as a board of equalization for the purpose of equalizing a proposed levy of taxes for special benefits received, correcting errors, hearing complaints, etc., must be and remain in session, ready to hear complaints, for at least one day from 9 A. M. till 5 P. M. and during the hours advertised for its meeting. *Hutchinson v. City of Omaha*, 52 Nebr., 345, followed.

15. Meeting of Board: ADJOURNMENT: CALL OF CHAIRMAN: NOTICE. Where by the record a sitting of a board of equalization is shown to have been held only a small part of the time advertised for its meeting, when an adjournment or recess is taken subject to the call of the chairman, and no meeting is held for several days, when, without a new notice, another meeting is held and a like adjournment is taken, and a third meeting is held several days later at which final action is taken, *held*, such action taken is no proper meeting of the board of equalization as required by law and the published notice, and is without authority, and a special levy of taxes so made is thereby invalidated.

16. **Final Action:** AFTER ONE SESSION. Final action in making any special assessments for benefits received in opening, extending and grading streets can not be taken until there has been a sitting of the board of equalization for at least one day and during the hours from 9 A. M. till 5 P. M.

APPEAL from the district court of Douglas county. Heard below before KEYSOR, J. *Reversed.*

*John T. Cathers* and *W. A. Redick,* for appellant.

*John T. Cathers:* The statutes relating to the publication of the delinquent tax list, and the selling of property by the county treasurer, are mandatory, and must be followed literally by the county treasurer, and his failure to comply with the law renders all the proceedings in relation thereto invalid. *Miller v. Hurford,* 11 Nebr., 383; *Ledwich v. Connell,* 48 Nebr., 172; *Smith v. City of Omaha,* 49 Nebr., 883.

If the county treasurer did not comply with the law in selling the land, the court erred in allowing twenty per cent interest and attorney's fees. *Pettit v. Black,* 8 Nebr., 52; *Lynam v. Anderson,* 9 Nebr., 367; *Jones v. Duras,* 14 Nebr., 40; *Dillon v. Merriam,* 22 Nebr., 151; *Stegeman v. Faulkner,* 42 Nebr., 53. The burden of proof is on the plaintiff to prove that the tax is legal. *Merrill v. Wright,* 41 Nebr., 351.

A board of equalization must be and remain in session ready to hear complaints during the hours advertised for its meeting. *Hutchinson v. City of Omaha,* 52 Nebr., 345.

*H. W. Pennock, contra:*

It is objected that the return made by the county treasurer to the clerk, of the public tax sale for the year 1890, was insufficient to comply with section 112 of the revenue law. The object of this section is twofold:

First. It provides for a permanent record to be kept by the county treasurer showing the lands sold, the names of the purchasers and the sum or sums for which each tract was sold. This is the general record of tax sales kept by the treasurer to indicate the condition of

such sales in his county. If the land has been redeemed, it is noted on this record; if a tax deed has been issued, that fact is also noted on the sales book.

Second. The latter half of this section provides for a "return" to be made by the treasurer to the clerk on or before the first Monday of December, following the public tax sale. It would seem also to provide for a "certificate" of the treasurer.

If the revenue act of 1879 be examined in all of its parts, it will be apparent that the provision for a return of the treasurer to the clerk subserves but one purpose, viz.: It is an official declaration that the public tax sale has closed, and that private tax sales, under section 113, may begin.

Return means report of an officer. It signifies the bringing back of some original document with the officer's certificate indorsed thereon, showing what has been done by such officer. Anderson's Law Dictionary, p. 898.

The word week, as used in the statute, means a period commencing on Sunday morning and ending Saturday night. Anderson's Law Dictionary, p. 1111; *Ronkendorff v. Taylor*, 4 Pet. [U. S.], 361.

On the question of notice counsel cited: *McEneney v. Town of Sullivan*, 125 Ind., 407; *Mayor v. Bouldin*, 23 Md., 328; *City of Ottawa v. Macy*, 20 Ill., 413; *Lyman v. Plummer*, 75 Ia., 353; *Clinton v. City of Portland*, 26 Ore., 410; *State v. City of Bayonne*, 52 N. J. Law, 503.

HOLCOMB, J.

An action was begun in the district court of Douglas county by plaintiff, appellee, for the foreclosure of a tax lien upon certain property in the city of Omaha, described in the petition, for state, county and city taxes, including special assessments against the property, on account of the opening, extending and grading of a certain street in said city. Several defenses were interposed at the trial by appellants, all of which were directed to the alleged invalidity of the tax sale and the special assess-

ments referred to.  A decree was rendered for the plaintiff for the principal sums paid at the tax sale and subsequently thereto, with interest and attorney fees, and the property was directed to be sold to satisfy the decree so rendered.  From this decree defendants appeal.  The several objections to the judgment of the trial court will be noted in their order.

It is first urged that the sale for taxes, being at private sale, was without authority and invalid, for the reason, as alleged, that the law had not been complied with, in that no report had been made to or filed with the county clerk, of lands sold at public auction, as required by section 112, article 1, chapter 77, of the revenue laws of the state.  The section referred to requires that "the treasurer shall keep a sale book, showing the lands sold, the name of the purchaser, and the sums for which each tract was sold, and on or before the first Monday of December following the sale of real property he shall file in the office of the county clerk of his county a return thereof, as the same shall appear on the said sale book, and such certificate shall be evidence of the regularity of the proceedings."  Before lands and lots can be legally sold at private sale, under the provisions of the section quoted, the treasurer must file with the county clerk a return, showing the lands and lots sold at public auction, to whom sold, and for what sum; and any attempt to sell real property for taxes at private sale without compliance with the provisions of said section invalidates the sale so attempted to be made.  The force and effect of the provisions quoted is no longer an open question in this state.  The construction given was put upon it as early as 1880, when, in the case of *State v. Helmer*, 10 Nebr., 25, it was determined "that the county treasurer had no right or power to sell real estate for taxes at private sale until after his report of sales of real estate at public sale is made and filed in the office of the county clerk."  The ruling just mentioned has been adhered to and reaffirmed in *Adams v. Osgood*, 42 Nebr., 451, and *Johnson v. Finley*, 54 Nebr., 733.

In the case at bar it is disclosed by a stipulation of the parties, preserved in the record, that the only attempt at compliance by the county treasurer with the statutory requirements under consideration, was in taking the records of his office showing the public sales of real property for taxes due that year into the office of the county clerk and, presenting such record to the county clerk, in his presence making a certificate thereon at the end of the record of sales to the effect that he thereby made a return, and that the list of property as shown on the record had been sold by him at public sale as required by law, and then signing his name to such certificate; after which, and on the same date, according to the stipulation, the said book or record containing said list of lands, with the certificate thereon, was taken back to the county treasurer's office, and that no other or different return of public sales was made for the year mentioned. This, in our judgment, is neither in letter nor in spirit a compliance with the section of the statute referred to. It is, in fact, a mere subterfuge or evasion of the law, and is no return at all, and can not be countenanced as such. It would be much more reasonable and logical to construe the statute as directory only, and hold that a compliance therewith is not essential to the validity of the sale of real property at private tax sale, than to treat as a compliance with the law the acts of the county treasurer as they are disclosed by the stipulation in the record in this case. As has heretofore been noted, this question is already settled by a construction of the section quoted, and a substantial compliance with its provisions is necessary in order that a private sale of lands for taxes may be valid. The law requires that this return, or report, shall be filed in the office of the county clerk. To file, in law, means "to leave a paper with an officer for action or preservation; and, to indorse a paper, as received into custody, and give it its place among other papers—to file away." Anderson, Law Dictionary. In modern usage, "filing a paper consists in placing it in the proper official's custody

by the party charged with this duty, and the making of the proper indorsement by the officer." *Stone v. Crow,* 2 S. Dak., 525, 528. "A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file. (Bouvier, Law Dictionary.) And the derivation and meaning of the word, as defined in the dictionaries, carries with it the idea of permanent preservation; becoming part of the permanent records of the public office where it is filed. (Rapalje & Lawrence, Law Dictionary; Century Dictionary.)" *People v. Peck,* 67 Hun [N. Y.], 560, 570; *Gorham v. Summers,* 25 Minn., 81; *Pfirmann v. Henkel,* 1 Bradw. [Ill.], 145. There being no proper return of lands sold at public auction, as by law required, the treasurer was without authority to dispose of the lot of land in controversy at private sale, and the tax sale thus made is, therefore, invalid. By the subsequent proceedings had thereunder, the plaintiff was not in a position to recover the penalty of twenty per cent interest and attorney's fee, as are allowed in cases o' valid tax sales. Under the holdings of this court, a. most, he is entitled to subrogation to the rights of the county, and to enforce a lien against the property upon which the taxes were paid for the principal sums paid, with interest thereon as provided by the statute.

In *Stegeman v. Faulkner,* 42 Nebr., 53, 54, it is held that "a purchaser at an invalid tax sale is not entitled to have taxed in his favor an attorney's fee as part of the costs of the foreclosure of the lien to which he has by payment become subrogated." In the opinion by RYAN, C., page 56, it is said: "As the rights of the appellant to foreclose are measured by the rights of the county in the same respect, it logically follows that the provision as to attorney's fees can not be held to apply to such a foreclosure as the plaintiff was entitled to in this action."

In *Dillon v. Merriam,* 22 Nebr., 151, it is held that "where for want of authority of the treasurer to sell land for taxes, no title passes to the purchaser; he is merely subrogated to the rights of the county, and to the same

rate of interest that the county would be entitled to recover.". See, also, *Adams v. Osgood, supra.*

Section 105, article 1, chapter 77, of the revenue law provides that all unpaid taxes upon real property after delinquency occurs shall draw thereafter ten per cent interest. Section 86, chapter 12*a*, Compiled Statutes, 1893, being the then charter act for metropolitan cities, provides that delinquent city taxes shall draw interest at one per cent a month. The plaintiff, therefore, is entitled to recover for state and county taxes paid principal with interest at the rate of ten per cent per annum; and for city taxes paid, the principal with interest at the rate of one per cent per month, or twelve per cent per annum.

The legality of the special assessments against the property in question, which were paid by plaintiff and for which he claims a lien upon the land, is also challenged. It is urged, in substance, that because the land was unplatted and the special assessments apparently large, the same effectuated a confiscation of the property, and, therefore, the taxes are illegal and unenforcible. It appears that, while the tract of land has never been platted into lots and blocks, it lies well within the city limits, and is evidently subject to special assessments for benefits, under the doctrine of assessments for local improvements in municipalities, such as is the city of Omaha. We are not apprised of the value of the land. The assessments appear to have been made with sole reference to the special benefits accruing to the land, and, in so far as fixing the amount thereof, the land was assessed in accordance with law, and in the same manner as were special assessments made on other property benefited by the local improvements, for the expense of which the assessments were made. While the assessments, $152.23 for opening and extending the street, and $743.70 for grading, may appear quite high, without knowledge as to the value of the property or the benefits derived from the improvements made, it can not be said either that the

21

assessments were unreasonable, extortionate or illegal, or that they were not entirely within the power and authority of the city making the levies for the purposes mentioned. It is to be presumed that the authorities, in making these special assessments, arrived at the amounts thereof with reference alone to the benefits thereby accruing to the property, and that the owner was required to contribute to the expenses of the improvements made only in proportion as his property was specially benefited thereby. In support of the contention of appellants that these assessments were illegal, our attention has been called to the *Washington Avenue Case*, reported in 69 Pa., 352. We do not think that authority in point. In the case cited, it was sought by special assessments to pay for grading, macadamizing and otherwise improving a public highway through the farming country of that state, by levying a tax upon the farms within one mile of the proposed highway. This, it was held by the supreme court of that state, was so unreasonable and unjust as to make the levy unconstitutional and clearly in excess of the legislative power of taxation. The rule, however, is different when applied to improvements of streets, alleys, etc., in cities, and is uniformly so recognized. In the case referred to, it is stated in the syllabus: "The legislature may enact a law providing a just assessment on proper objects according to benefits conferred, and not imposing unfair and unequal burdens. Assessing a tax to pay for streets, etc., in towns in proportion to the frontage on the street, is a reasonable exercise of the taxing power according to the benefits received." It is under the doctrine just stated that the assessments complained of were made. Authority under section 6, article 9, of the constitution, is given by statute therefor, and it is not material whether the property assessed is laid out in lots and blocks or is an unplatted tract. The city acted entirely within the scope of its power and authority, and the objection of appellants in this respect can not be sustained.

It is also argued that the notices of the sitting of the

board of equalization, which was required to act upon the proposed special assessments, were insufficient. This objection we hold untenable. The notices were directed "to the owners of lots and lands abutting on or adjacent to streets, alleys or avenues, situated in whole or in part within any of the districts hereinafter named," and stated that the city council would sit as a board of equalization for the purpose of equalizing the proposed levy of special tax or assessment, correcting errors, hearing complaints of owners, etc. The notices appear to contain all the information and more than is required by section 85, chapter 12a, Compiled Statutes, 1893 (the charter act which was then in force), and were published for the required period of time. The purposes for which the board of equalization sat and the time of sitting are apparent from the notices, and, in our judgment, sufficient to meet the requirements of the statute. In *Lyman v. Plummer*, 75 Ia., 353, it is held: "When notice of a special assessment on city property to pay for street improvement is necessary to be given to the respective owners, and the city has provided by ordinance for giving such notice by publication in a newspaper of general circulation published in the city, notice given in accordance with the provisions of such ordinance is sufficient." In support of the rule the opinion cites *Stewart v. Palmer*, 74 N. Y., 183; *Macklot v. City of Davenport*, 17 Ia., 379. See, also, *City of Ottawa v. Macy*, 20 Ill., 413; *State v. City of Bayonne*, 52 N. J. Law, 503. A comparison of the notices in question with the statute referred to brings them within the rule above announced.

It is contended that the tax sale is invalid because the advertisement of the delinquent tax list was not first published till October 10, 1891. The law requires that the notice shall be published, commencing the first week in October preceding the sale to be made, on the first Monday of November following. Compiled Statutes, 1899, chapter 77, article 1, section 109. It is contended that the first publication affecting the case at bar was

not made until Saturday, October 10, 1891. This, in our opinion, is a compliance with the provisions of the section referred to. The requirement that the notice shall be published commencing the first week in October, is met by publication during the first week of the month as distinguished from the first seven days. The word "week," in its legal significance, as we understand the term, means a period of time commencing on Sunday morning and ending on Saturday night. By common consent, and in computing time throughout Christendom, Sunday is recognized as the first day of the week. The first week, therefore, would be a period of time of seven days duration, beginning on Sunday and ending on Saturday following. In *Rokendorff v. Taylor*, 4 Pet. [U. S.], 348, 360, an interpretation of the word is given which we are disposed to think is correct, and which we adhere to. It is said in this opinion by McLean, J., that "a week is a definite period of time, commencing on Sunday and ending on Saturday." See, also, Anderson, Law Dictionary. The 10th day of October occurring during the first week of that month as herein defined, and the publication having been begun on the day mentioned, it was commenced in the first week in October preceding the sale, and was, therefore, in compliance with the statute in that respect.

Finally, it is urged that the special assessments are invalid because it does not appear that the board of equalization was in session and remained so during its deliberations as required by law; and especially so because it is not shown that a sitting of such board was held on the day mentioned in the published notice for the meeting, from 9 A. M. until 5 P. M. of said day. It is provided by law that before any special taxes may be levied, the city council shall sit as a board of equalization for not less than one day, from 9 A. M. till 5 P. M., for the purpose of equalizing the proposed levy, correcting errors, and hearing all complaints which may be made by the owners of property, which it is proposed to assess. Compiled Statutes, 1893, ch. 12a, sec. 85. The record in

this case discloses due publication of the notice of the sitting of the board on July 17, 1890, from 9 A. M. till 5 P. M.   It is further shown that on the date as published the city council, pursuant to the notice, convened as a board of equalization; that some little business was transacted, a motion being passed to defer action regarding other streets than the one in question, pending the final determination of a case then pending in the supreme court; and a committee of the council being appointed to report the districts, and the boundaries of the same, that were proposed to be taxed in each case of opening or extending streets.   The board thereupon took a recess subject to the call of the chairman.   This occurred on July 17, the date mentioned in the notice.   No further meeting appears to have been held or business done until August 26, when some further proceedings were had regarding certain proposed special assessments, whereupon another recess was taken, subject to the call of the chairman.  Again, on September 16, a meeting of the board was held, and final action was taken regarding the levy of the special taxes complained of. The foregoing meetings were held with reference to the special levies on the property in question for opening Park street.   The record as to the special levy for grading the same street is substantially the same, except the difference in the dates.   Can it be said that the action of the city council, sitting as a board of equalization with respect to the matters herein involved, is a compliance with the statute last cited?   We think not.   The non-compliance with the plain provisions of the law, and the gross irregularities, are so apparent as at once to lead to the conclusion that the entire proceedings, subsequent to the publishing of the notice of the meeting of the board, are null and of no effect, and that the special tax levies and all subsequent acts thereunder were thereby invalidated, and no legal tax sale could be made by virtue of the void levy. "It is a rule of construction peculiarly applicable to special assessments authorized by section 6, article 9, of the constitu-

tion that the record must show affirmatively a compliance with all the conditions essential to a valid exercise of the taxing power, and that the omission of such facts will not be supplied by presumptions." *Smith v. City of Omaha*, 49 Nebr., 883. Copious citations in support of the rule laid down in the above case are found in the opinion written by Post, C. J. In *Hutchinson v. City of Omaha*, 52 Nebr., 345, it is held: "A board of equalization must be and remain in session ready to hear complaints during the hours advertised for its meeting." In the opinion in the case last cited it is said by Irvine, C., speaking for the court, p. 350: "Furthermore, the record discloses that there never was a sitting of the board of equalization in any proper sense of the term. The notice was that the council would sit as a board of equalization at the office of the city clerk on the 4th day of December, 1891, from 9 A. M. to 5 P. M. About the first hour named a majority of the members of the council appeared at the place designated and appointed a chairman. They one by one drifted away, and an entry was made that a recess had been taken subject to the call of the chairman. The chairman himself remained for the purpose of receiving written protests, but the board was not there to hear them. Some days thereafter, without any new notice, the chairman, by casual meetings on the streets, called the board together and the session was resumed and the scheme of assessment agreed upon. Such a proceeding can not be tolerated. Property owners are entitled to have the board in session during the hours advertised, and when they do not in fact sit they can not conceal their dereliction under the subterfuge of a recess and a subsequent meeting without notice."

It is urged in the case at bar that because the record is silent as to the time the board took a recess subject to the call of the chairman, it is presumed that they were in session at the first meeting during all the hours they were required to sit by the published notice as well as by the section of the statute governing the subject. The fair

Travelers Ins. Co. v. Snowden.

inference from reading the record is that they were in session but a very short time, transacting no other business than that heretofore mentioned, and then adjourned for an indefinite and undetermined period. Final action in making any special assessments of the character under consideration can not be taken until there has been a sitting of the board for at least one day and during the hours mentioned in said section 85. This is a condition essential to a valid levy (*Hutchinson v. City of Omaha, supra*), and is in the nature of a jurisdictional step in making such assessment. Its performance must affirmatively appear from the record. *Smith v. City of Omaha, supra.* The law never assumes jurisdictional facts. *Morrill v. Taylor*, 6 Nebr., 236, and cases there cited. The board of equalization acted in a quasi-judicial capacity, and its actions are subject to review by higher judicial tribunals. *Webster v. City of Lincoln*, 50 Nebr., 1. Even had jurisdiction been acquired by the meeting of the board pursuant to the notice, it would seem that it lost such jurisdiction by adjournment without day and reconvening without new notice or with no notice at all.

For the reasons given, the judgment of the lower court is reversed, and the case remanded for further proceedings in conformity with the views herein expressed.

REVERSED AND REMANDED.