DAVID C. JOHN, APPELLANT, v. WILLIAM J. CONNELL ET AL., APPELLEES.*

FILED FEBRUARY 4, 1904.    No. 9,373.

1. Special Assessments: BOARD OF EQUALIZATION. A levy of a special assessment of taxes for benefits received by reason of a public improvement, is not invalidated because the city council, sitting as a board of equalization under the provisions of section 132, chapter 12a, Compiled Statutes, 1893, after meeting in pursuance

* See former opinions, 61 Neb. 267 and 64 Neb. 233.

of a regularly published notice and organizing for the purpose of equalizing such special assessment, correcting errors, etc., take a recess before the expiration of the time mentioned in the notice and prescribed by statute, provided, the city clerk or some member of such board shall be present to receive complaints, applications, etc., and give information; and providing, no final action is taken except by a majority of the members of such board in open session. *Medland v. Linton,* 60 Neb. 249, distinguished.

2. ———: ———. Where a board of equalization, in pursuance of published notice, meets at the office of the city clerk, organizes, transacts some business and then takes a recess, subject to the call of the chairman before expiration of the time mentioned in the notice, it will be presumed that the city clerk remained present at his office during the time stated to receive complaints, give information, etc., in conformity with the provisions of said section.

3. ———: ———: FINDING. A finding by the board of equalization that all real estate on which special assessments are levied, "are specially benefited and shall be assessed for the full cost of construction of such sewers according to the feet frontage," is not so fatally defective as to the requirements of a finding of uniformity as to invalidate the special assessment and render it subject to collateral attack.

4. ———: ———: NOTICE. The requirement of the statute that notice of the sitting of the board of equalization shall be published in three daily papers for a specified period of time, is met by the publication of such notice in two daily papers printed in the English language and one daily paper printed in the German language, when these are all the daily papers published in the city where the special assessment is to be made.

APPEAL from the district court for Douglas county: CLINTON N. POWELL, JUDGE. *Reversed in part.*

*H. P. Leavitt,* for appellant.

*Connell & Ives, contra.*

HOLCOMB, C. J.

The present litigation, which has dragged its weary length over a considerable period of time, has, as we view the record, become restricted to an inquiry relating solely to the validity of a certain special assessment of sewer

taxes on the real estate involved in the controversy, for benefits received. In the first opinion of the court, the question not being fully and clearly presented, it was held that no sufficient objection was shown to render the taxes invalid. On a rehearing before one of the departments of the commissioners, granted solely to investigate further this one question, the subject was inquired into and the special assessment of sewer taxes was held invalid and unenforceable on two grounds. One ground was that the board of equalization, required to pass upon and adjust special assessments of this character, was not shown by the record to have held a session at the time and place given in the publi..hed notice, as required by statute, and that the proceedings thereafter had were thereby invalidated. The other ground was that there was no finding by the board of equalization that the benefits to be derived from the public improvement were equal and uniform as to all the lots and tracts to be affected, as is required by statute. A reinvestigation of the case, having these two questions specially in view, results in a contrary conclusion to that last expressed.

On the first point, the opinion last prepared follows *Medland v. Linton,* 60 Neb. 249. That case, however, is to be distinguished, because the special assessment in the case at bar was made under a statute materially differing from the one construed in the *Medland* case. The original statute provided unequivocally and without qualification that the board of equalization must hold a session for at least one day, between the hours of 9 A. M. and 5 P. M., to correct errors, hear complaints, adjust inequalities, etc., before a special assessment for a public improvement could be levied. Following prior decisions, it was decided in the *Medland* case that the record must affirmatively show the holding of such a meeting in pursuance of a published notice, at the place and for the time stated, and that such proceeding was an essential condition to a valid exercise of the taxing power. The statute as thus construed was afterwards amended (sec. 132, ch. 12a, Com-

piled Statutes, 1893), so that, when the action was taken in the case at bar which is complained of, this section of the statute, among other things, provided:

"When sitting as a board of equalization, the council may adopt such reasonable rules as to the manner of presenting complaints and applying for remedy and relief as shall seem just. It shall not invalidate or prejudice the proceedings of such board that a majority of members thereof do not, after organization by a majority, continue present at the advertised place of sitting, during the advertised hours of sitting. *Provided,* the city clerk or some member of said board shall be present to receive complaints, applications, etc., and give information; and *Provided,* no final action shall be taken by such board except by a majority of all the members elected to the city council, comprising the same and in open session."

The record in the case at bar shows that, in pursuance of a regularly published notice, the council met as a board of equalization at the office of the city clerk and duly organized by electing a chairman. The record then discloses that the call or notice of its meeting was incorporated as a part of the proceedings; several petitions were received from property owners relating to other property than that here involved, and action taken thereon, the nature of which is not disclosed by the record. It is then recited: "Motion: That board take a recess subject to call of the chairman. Attest. John Groves, City Clerk." The next meeting of the council as a board of equalization was held on August 11 following, at which time, final action was taken on the special assessment complained of, together with numerous other matters then pending before the board. The record, as we construe it, affirmatively shows that a majority of the council sitting as a board of equalization met and organized, at the time and place, and in pursuance of the regularly published notice, and met at the office of the city clerk, who was present to record the proceedings of the board and perform his duties as such. Some business properly pertaining to the meeting was

transacted. Just how long, or covering what period of time, the board remained in session is undisclosed by the record. After the transaction of all or some of the business then before it, the board took a recess, subject to the call of the chairman. It is not necessary, says the statute, that a majority of the board continue present after they have regularly convened and organized, provided the city clerk or some member of said board shall be present to receive complaints, etc., and provided that final action be taken only by a majority and in open session. The record, we are of the opinion, discloses with sufficient certainty that these provisions of the statute have been complied with. Obviously it was deemed by the legislature sufficient if, after convening and organizing as a board of equalization, at the time and place provided in the notice, either the clerk or a member of the board should be present, at the place and during the time advertised for the presentation of complaints, petitions, etc., to receive such complaints, applications, etc., and give to such party any needful and proper information.

May we assume, without doing violence to the rule requiring the record to show affirmatively compliance with all essential conditions to a valid exercise of the taxing power, that the city clerk was present at the place of meeting of the board, which was his office, during the hours of the day mentioned, to wit, from 9 A. M. to 5 P. M., to receive applications, complaints, and give information, etc., as the proviso of the section referred to says may be done? The question must, we think, be answered in the affirmative. Here is an important city officer of a city of the metropolitan class, present at his office as a clerk of the board of equalization and to perform all duties that devolve upon him as such clerk. Manifestly it was his duty to receive complaints, if any were presented; and the statute says, in effect, that the board of equalization may convene and organize, and, if the clerk or a member of the board shall be present to receive complaints during the hours of their meeting, their personal attendance is not

otherwise required. We are quite well satisfied that no violence is done to any legal presumption, nor to the rule adverted to, in saying that substantial compliance with the section of the statute we are dealing with is disclosed by the record; and that the tax complained of can not be successfully impeached, because of the action of the board of equalization in the manner of proceeding, while equalizing the special assessment complained of. It is conclusively shown by the record that all orders, findings and other action taken affecting substantially the special assessment, the validity of which is challenged, was done by a majority of the board while in open session.

On the other point, the record recites as a part of the proceedings of the board of equalization that: "Having fully and carefully considered all complaints or objections, both written or verbal, and having examined the property adjoining and adjacent to said improvements, and having full and personal knowledge of the character of the said improvements and the special benefits to such property respectively by reason of said work;

"And whereas it appears that due notice of the sitting of the council as such board of equalization of date July 13, 1891, was duly published in the daily papers of the city as required by law;

"Therefore, be it resolved, * * * That all lots and real estate abutting on or adjacent to sewers in sewer districts aforesaid are especially benefited, and shall be assessed for the full cost of construction of said sewers according to their feet frontage and the usual scaling back process to the depth of said districts as created."

Although informal and not in strict conformity with the statutory requirement, we see no valid reason for saying the finding is insufficient and does not meet the demand of the statute requiring a finding that the benefits are equal and uniform as to all the property to be affected by the improvement. The finding that the property is specially benefited and should be assessed for the full cost of construction according to feet frontage, is tanta-

mount to a statement that the benefits are equal and uniform. If the property is benefited according to the feet frontage, it would seem that the benefits are equal and uniform. In *Portsmouth Savings Bank v. City of Omaha*, 67 Neb. 50, where a similar question was being investigated, the soundness of the views expressed in the last opinion in the case at bar on this point was seriously questioned, and it was argued that if error was committed in this regard, it should have been corrected by a direct proceeding and not by a collateral attack. In the *Portsmouth Savings Bank* case, it is held that a finding that the property is benefited "to the full amount in each case of said proposed levies," meets the requirement of the statute as to a finding of uniformity, as against an attack by injunction proceedings. The objection is, we are satisfied, untenable, and if the finding may be regarded as subject to attack collaterally, it is in the present case not so fatally defective as to invalidate the tax thereafter levied.

It is also argued by appellant, and it seems proper here to refer to the matter, that the notice of the meeting of the board of equalization was insufficient because of the manner of publication.

One of the sections of the charter act governing cities of the metropolitan class (sec. 85, chap. 12a, Compiled Statutes, 1893), provides, that the notice of the sitting of the board of equalization shall be given by publication in three daily papers of the city. The record discloses that there are but two daily papers published which are printed in the English language, and one in the German language. The notice in the case at bar, it appears, was published in all three of the papers mentioned, being printed in the German language in the German paper. It is quite true that, ordinarily, a publication of a legal notice in a foreign language, when not expressly authorized by statute, would not be a valid notice. In the instant case, however, we think an exception arises. The requirement of the rule as to publication of notice in the English language is met by the publication in both dailies printed in that language, they

being all the daily publications in the city printed in English. The legislature hardly contemplated an impossibility, nor that a publication of the notice in English in a German daily paper should be had in order to comply with the statutory requirement. We are not disposed to adopt such a construction. The object of the notice by publication is to give the greatest possible publicity. This can best be accomplished by the notice being printed in the German language in the German paper, when that publication must be resorted to in order to publish the notice in three daily papers. Its readers of course are accustomed to the use of the German language. If published in the English language, the notice would no doubt, in a large measure, fail of its purpose. If in the English language, a large number of the readers of the paper would not get the benefit of the notice which the law intends. The objection is not regarded as tenable. The judgment last rendered in this case is vacated and set aside, and the one rendered February 6, 1901 (61 Neb. 267), reinstated and adhered to.

JUDGMENT ACCORDINGLY.