## BENJAMIN F. BENNETT ET AL. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Publication of Advertisement Must be Made in the English Language— Injunction Against Execution of Illegally Awarded Municipal Contract.*

When a statute directs publication of a notice to be made in a newspaper, the notice must be in the English language and in a newspaper printed in that language unless the statute expressly provides that the notice shall be given in a newspaper printed in some other language.

The charter of Baltimore City, section 14, requires that all proposals for bids for public work to cost over $500 shall be advertised in two or more daily newspapers published in that city. An advertisement ask-

ing for bids for the paving of a street to cost over $500 was published for the prescribed time in one English and one German newspaper, and the contract was awarded to a bidder. Plaintiffs, taxpayers and owners of lots abutting on the street, liable as such for a part of the cost of the paving, filed a bill asking that the performance of the contract be enjoined. *Held*, that since the publication of one of the notices in German was unauthorized, the contract could not lawfully be awarded in pursuance of it.

*Held*, further, that the plaintiffs are entitled to maintain the bill to restrain the performance of such illegal contract.

*Decided November 13th, 1907.*

Appeal from the Circuit Court of Baltimore City (ELLIOTT, J.)

The cause was argued before BOYD, SCHMUCKER, BURKE and ROGERS, JJ.

*Thomas G. Hayes* and *George A. Solter* (with whom was *W. Browne Hammond* and *Harry B. Dillehunt* on the brief), for appellants.

1. The clause in the City Charter of Baltimore City which it is claimed has been violated by the city in the advertisement for bids or proposals for the grading, paving and curbing of Carroll street, is a part of section 14, and is as follows: "*Unless otherwise provided for in this Article*, proposals for the same (public work, &c.), shall be first advertised for in two or more *daily newspapers published in Baltimore City*, for not less than ten nor more than twenty days."

The contention of the appellant is that the words in the above quotation of "*daily newspapers published in Baltimore City*," define a specific and exclusive class of newspapers, in which the prescribed advertisement must be inserted, namely, newspapers printed and published daily in Baltimore City in the English language, the official language of the country. No newspaper printed and published in German or any other foreign language is embraced in this class, or in other words, these words prohibit and exclude by implication, if not expressly, the publishing of such advertisement in any newspa-

per printed and published in the German or other foreign language. The further contention of the appellants, is that, if this charter provision is violated, by two advertisements published, one in a newspaper printed and published in the English, and the other in a German newspaper, as was done in the case at bar, the whole proceedings taken by the city under such advertisement is absolutely null and void, that is, the contract awarded for the doing of the grading, paving and curbing of the street in question, and the assessment for benefits on the abutting property owners is without even the color of law and unenforceable. It must be conceded that the object of the advertisement is to give *notice* to the persons who do the work required, asking them to bid for the public work to be done. The object of this notice is to get all the bidders possible, so as to insure to the taxpayers and abutting owners, who pay the bill, the *fullest, freest and fairest competition*, thereby diminishing the cost of the proposed public improvement to the minimum. Could there be a more certain way of depriving the taxpayers of this competition, than to suppress this notice by inserting it in a newspaper or newspapers not read by the masses of the people among whom are these desired bidders? There is still another vital objection to the construction of this clause of the City Charter given by the learned lower Court, it is this, there could not be a wider door opened for fraud and graft than to permit municipal officials to select for this advertisement a newspaper or newspapers printed and published in a foreign language. If one such newspaper may be selected why may not two such be selected? Then will it be easy for the corrupt municipal official to get the job for his favorite bidder at his own price and then divide with him the plunder of his ill gotten gains. The case at bar aptly illustrates the evil of suppressing this advertisement by publishing it in a newspaper printed and published in a foreign language.

For the paving, etc., of Carroll street, there was a *single bid*. The bill avers that the contract price charged for the work by this single bidder, was so large in price as to make the amount

of benefits assessed and levied upon the abutting property of the appellants, a virtual confiscation of this property. The result of such advertisements, as given in this case, is a concrete illustration of the effect of such a construction of this provision of the City Charter. There is a Sewer Commission now directing the great and expensive work of providing a system of domestic sewerage for Baltimore City. The contracts they give out or are to give out for sections of these great sewers, involve an enormous amount of the taxpayers' money. Bids or proposals for all these large contracts have to be advertised for under this clause of section 14 of the City Charter. Would it not be monstrous to say that these bids or proposals can be lawfully inserted in a newspaper or newspapers printed and published in a foreign language?

II. But in addition to the common sense and rational aspect of the question, there are abundant canons of statutory construction which condemn the construction or interpretation given to this clause of the City Charter by the learned lower Court. The language used in the very clause in question, and other sections of the same City Charter relating to the same subject matter, namely, advertisements, conclusively demonstrate that by every canon of construction of statutes known to the law, section 14 of the City Charter excludes the publishing of the advertisement therein provided in any but newspapers printed and published in the English language. In other sections of the City Charter provision is made for publishing certain advertisements in German newspapers. Section 43 of the City Charter directs the City Collector as follows: "Shall first give notice by advertisement published * * * in two of the daily newspapers published in said city, *one of which shall be in the German language.*"

Section 49 of the City Charter provides that the same officer "shall give notice by advertisement published * * * in three of the daily newspapers published in said city, *one of which shall be in the German language.*"

Take now sections 14, 43 and 49 and place them side by side and read them in connection with each other, what must

necessarily follow, if as contended by the city, section 14 per- mits the use of a German newspaper for the advertisement therein prescribed, why the necessity of inserting the words "*one of which shall be in the German language*" in sections 43 and 49 ?  The insertion of this provision, as to a German newspaper in sections 43 and 49 excludes it in section 14. This comparison is permissible, for it is a well-known canon of construction or interpretation, that the sections of a code relating to the same subject must be read and construed to- gether.  This Court has so said in *State* v. *Popp*, 45 Md. 437, 438, and also in *Reese* v. *Starner*, ante p. 50.  But there is an- other reason for this contention, stronger, if possible, than the foregoing, and this is found in the opening words of the clause in question.  "*Unless otherwise provided in this Article.*" What is the legal effect and meaning of these words ?  These words must by direct reference refer to sections 43 and 49 which permit the use of a German newspaper.  If this is so, and it must be so, you have virtually section 14 by an express prohibition excluding a German or other foreign newspaper from the advertisement prescribed in this section of the City Charter.  This language conclusively settles the whole ques- tion and abundantly supports the contention of the appellants, and demonstrates the palpable error of the decree of the lower Court sustaining the appellees' demurrer to the bill and must be reversed.

III.  Passing now to the consideration of what the highest Courts of other States have judicially decided as to the mean- ing of the words "*daily newspapers published in Baltimore City.*"  Every Court which has spoken on this subject, has with emphasis and without a doubt in legal effect, decided and declared that these words "daily newspapers published in Bal- timore City" or their equivalent in substance, mean always a newspaper or newspapers printed and published in the English language, it being the official language of the country.

"*In the absence of a direction to the contrary*, the publication of a notice must be *in the English language*, and in a newspa- per printed in that language."  23  *A. & E. Ency. Law*, 308.

The cases in the State Courts which have decided this question, following this rule of law, are the following: *Goebel* v. *Chamberlain*, 99 Wis. 583, 40 L. R. A. 843; *City of Chicago* v. *McCoy*, 135 Ill. 344; 11 L. R. A. 413; *Schloenbach* v. *Hardin County*, 53 Ohio St. 345; 41 N. E. 441; *Cincinnati* v. *Bickett*, 26 Ohio St. 49; *Schaale* v. *Wasey*, 70 Mich. 414; *Turner* v. *Hutchinson*, 113 Mich. 245; 71 N. W. 514; *Graham* v. *King*, 50 Mo. 23; *Road* v. *Upper Hanover*, 44 Pa. St. 277.

A quotation from the first of the above cases, *Goebel* v. *Chamberlain*, *supra*, gives virtually what the other cited cases say in their respective opinions as to the question under consideration. · The Supreme Court of Wisconsin said: "It will be observed that the statute uses the words *'a newspaper'* without limiting it to any kind of a newspaper, either German or English   *   *   *   The statute when construed *in the light of the common law* invites bids from only qualified newspapers, *and a paper printed in the German language is not within the statute*   *   *   The English language is the language of the country to be used in all legal and official notifications of proceedings, *in the absence of any statute authorizing to the contrary.*"

IV. The violation of the City Charter as was done in the case at bar by the insertion of one of the two advertisements in a German newspaper had the legal effect to make the whole proceedings taken by the city under this illegal advertisement, absolutely null and void, and the city was without the slightest legal *power* or *jurisdiction* to award the contract for the improvement of the street in question, or to levy the assessments for benefits on the abutting property of these appellants or tax the general taxpayers for paving the cross streets.   20 *A. & E. Ency. Law*, 1165; 1 *Dillon M. Corp.*, secs. 449, 457, 466; 1 *Abbott M. Corp.*, sec. 362; 1 *Beach P. Corp.*, sec. 252; *McCloud* v. *Columbus*, 54 Ohio. St. 439; 44 N. E. 95; *Addis* v. *Pittsburgh*, 85 Pa. St. 380; *McEwin* v. *Gilker*, 38 Ind. 235, 236; *Taylor* v. *Lambertsville*, 43 N. J. Eq. 107; 10 Atl. 809; *Parr* v. *Greencush*, 72 N. Y. 463.

The Supreme Court of Ohio, in the case of *McCloud* v. *Co-*

*lumbus, supra,* states the law on this point as follows: "The Circuit Court held the contract by virtue of which plaintiffs sought to recover *void,* for the sole reason that the proposition for bids for making the improvements, *was not advertised* as prescribed by sec. 2303 R. S.   \*   \*   \*   The judiciary should construe these restrictive statutory provisions designed by the Legislature to protect the public treasury from *unconscionable private greed* so as to effect the object intended.   To accomplish the end designed by statute the *publication* of the notice prescribed by section 2303 should be held a *condition precedent* to the *power* of the city to enter into contract providing for the improvement."

. This Court has been as emphatic, as any of the Courts in asserting and maintaining this principle of law. Some of such cases are the following: *Mayor, &c., Baltimore* v. *Eschbach,* 18 Md. 276; *Mayor, etc., Baltimore* v. *Reynolds,* 20 Md. 1; *Mayor, etc., Baltimore* v. *Kirkley,* 29 Md. 85; *Horn* v. *Mayor, etc., Baltimore,* 30 Md. 218; *Mayor, etc., Baltimore* v. *Musgrave,* 48 Md. 272; *Mayor, etc., Baltimore* v. *Johnson,* 62 Md. 227, 228.

In the *Kirkley case, supra,* this Court said: "In such cases the *mode* is the *measure of the powers.*"

In the *Horn case, supra,* the same principle of law was thus stated by this Court "which (powers) can be exercised by them in the manner and form only prescribed by law."

V. The second reason assigned in the appellee's demurrer to the bill of complaint, is that the appellants had "full, complete and ample remedy at law." This reason the appellants now desire to consider. The appellants, as appears from the averments of the bill of complaint, sue in a dual capacity, one as the owners of the abutting property, on which the assessments for benefits is levied, and the other as general taxpayers who will be required, if the proceedings are valid, to pay in the general tax levy for paving, etc., the streets which intersect Carroll street, called the cross streets. The appellants contend that in both of these capacities, they are entitled to the injunction sought and that the lower Court committed error in refusing the injunction asked in the bill.

*a.* Considering first the capacity in which the appellants sue as the owners of the abutting property. The appellants claim in as much as they are not *"dissatisfied"* with their respective assessments, that is with the division of the cost of the improvement among themselves, that although an appeal by the ordinance is given to a law Court, they cannot avail themselves of the right of this appeal, because not being *"dissatisfied"* with the benefits assessed upon them, they are not in the class given this right of appeal to a law Court. Again the appellants contend that if they are wrong in the above claim, yet this right of appeal to a law Court does not give them a "full, complete and ample remedy." They base this position upon the fact, that as the whole proceeding of the city, because of the illegal advertisement, is an absolute nullity and the city is without a scintilla of *power* or *jurisdiction* to award the contract as was done by the Board of Awards, and also that the levy of the assessment on the abutting property of these appellants is equally void and of no effect, and hence these appellants claim to have the summary right, which the law Court does not give them, to go into equity and have the chancellor restrain the city from selling their property under this absolutely null and void proceeding. It is not an irregularity in the proceedings of which the appellants complain, but an attempt to take their property under the levy in question, when the city has no power or jurisdiction to do this illegal act, because of the illegal advertisement. This Court has repeatedly recognized this rule of law, and given the relief by injunction on facts identical with the facts of the case at bar. Some of these many cases, which fully sustain this contention of the appellants, are: *Stuart* v. *Mayor, etc., Baltimore,* 7 Md. 315; *Holland* v. *Mayor, etc., Baltimore,* 11 Md. 197; *Mayor etc., Baltimore* v. *Porter,* 18 Md. 301; *Mayor, etc., Baltimore* v. *Grand Lodge,* 44 Md. 228; *Friedenwald* v. *Shipley,* 74 Md. 228.

*b.* The appellants, as general taxpayers, in addition to their rights as abutting property owners, have the legal right to stop the city by an injunction, from the illegal expenditure of money

or the doing of any illegal, unconstitutional or *ultra vires* act. This principle of law has been so often decided and declared by this Court that a reference only will be made to some of the many cases.   *Mayor, etc., Baltimore* v. *Gill,* 31 Md. 393; *St. Mary's Industrial School* v. *Brown,* 45 Md. 310; *Kelly* v. *Mayor, etc., Baltimore,* 53 Md. 141; *Peter* v. *Prettyman,* 63 Md. 568, *Mayor, etc., Baltimore* v. *Keyser,* 72 Md. 108; *Davidson* v. *Balto. City,* 90 Md. 513; *Balto. City* v. *Johnson,* 62 Md. 227–228.

*Edgar Allan Poe* (with whom was *W. Cabell Bruce* on the brief ), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City sustaining a demurrer to and dismissing a bill filed by the appellants as taxpayers and owners of lots abutting on Carroll street in that city to restrain the city from performing a contract which it had made with Patrick Reddington for paving the street.

The substantial ground of the bill was that the contract with Reddington was void because the advertisement for proposals for the paving to which it related had not been published in conformity with the provisions of sec. 14 of the city charter. That section requires all proposals for bids for public work, to cost over $500, to be advertised in two or more daily newspapers published in Baltimore City.   The proposals for bids for paving Carroll street involved an expenditure of over $500 and they were in fact advertised in one English and one German newspaper published in that city.   The pivotal question, therefore, in the case, is whether the publication thus made gratified the requirements of the section in that respect.

The full text of section 14 is as follows :

"14.   Hereafter in contracting for any public work or the purchase of any supplies or materials involving an expenditure of five hundred dollars or more for the city or by any of the city departments, sub-departments or municipal officers not

embraced in a department, or special commissions or boards, unless otherwise provided for in this article, proposals for the same shall be first advertised for in two or more daily newspapers published in Baltimore City, for not less than ten nor more than twenty days, and the contract for doing said work or furnishing said supplies or materials shall be awarded by the board provided for in the next section of this article and in the mode and manner therein prescribed."

It is well settled as a general proposition in this country that in the absence of a direction to the contrary the publication of a notice required by law to be made must be in the English language and in a newspaper printed in that language. 21 *A. & E. Encyc. Law*, 308. This proposition has been definitely announced or relied upon by the Courts of last resort of many of the States and no direct decision to the contrary has been cited to us or come to our knowledge. *City of Chicago* v. *McCoy*, 135 Ill. 344; *Goebel* v. *Chamberlain*, 99 Wis. 583; *Schloenbach* v. *Hardin County*, 53 Ohio St. 345; *Cincinnati* v. *Bickett*, 26 Ohio St. 49; *Schaale* v. *Wasey*, 70 Mich. 414; *Turner* v. *Hutchinson*, 113 Mich. 245; *Graham* v. *King*, 50 Mo. 23; *Road of Upper Hanover*, 44 Pa. St. 277.

These cases all treat the English language as the official or ordinary language of the country and hold that a mere direction in a statute that an advertisement be made in a given number of newspapers must be so construed as to require the use for that purpose of newpapers published in the English language. This proposition applies with especial force to a State like Maryland where from the earliest colonial times the English language has been employed in the official proceedings of all departments of the government.

If we turn now to the contents of the section of our law brought under review by the present appeal we find that they are positive in their terms and comprehensive in their scope and are plainly declared to be applicable to all advertisements of proposals for public work or materials except such as may be *"otherwise provided for"* in the Article of the Code of which section 14 forms a part. Turning to the other sections

of the Article relating to the same or kindred subjects it appears that in some of them the *other provision* contemplated by section 14 is found and that they contain express authority to insert in a German newspaper the advertisements which they direct to be made.

Such a provision is found in section 43 relating to the publication of notice of the proposed sale of lands for the non-payment of taxes, and section 49 relating to notices by the City Collector of sale of goods and chattels distrained or levied on for non-payment of taxes.

Counsel for the city contended in argument before us that the presence in sections 43 and 49 of the expression "one of which shall be in the German language" in connection with the direction to publish notice in a given number of daily newspapers published in Baltimore City must be regarded as a legislative recognition of the fact that a daily newspaper published in the German language is included in and embraced by the term "daily newspaper published in Baltimore City." That claim is too broad. It is undoubtedly sound as applied to the construction of secs. 43 and 49 where the two expressions referred to are found in juxtaposition, but it is unsound as applied to the construction of sec. 14 in which no expression relating to a German newspaper is found. It is unsound as applied to sec. 14 for the further reason that the language there used recognized as excepted from its operation those cases which should be "*otherwise provided for*" in other sections of the Article. Even without the exception contained in sec. 14 of cases otherwise provided for the three sections when considered side by side come within the operation of the proposition *expressio unius exclusio alterius*, and the absence from sec. 14 of the authority found in the other two sections to advertise in a German newspaper must be held to show that in the cases falling within the operation of section 14 a German newspaper could not be employed to publish the notices.

In *Baltimore v. Johnson*, 62 Md. 227–8, the bill was filed by owners of ground bounding on Covington street to restrain the city from enforcing the collection of a tax imposed for grad-

ing and paving that street upon the ground that the ordinance under which the work had been done required the advertisement for proposals to do the work to be published in three newspapers and the publication had in fact been made in but one paper.   This Court held the objection to be fatal to the validity of the tax, saying in the opinion filed in the case : "Nothing can be plainer than that advertising in one newspaper only is not a substantial compliance with this requirement.   It is also obvious that this is not a mere formal or immaterial provision, but a substantial and important one, and in fact one in which the property owners who are required to pay for the work are deeply interested.  The contract to be thus awarded to the lowest bidder, determines the cost of the work, and, therefore, the amount of the tax to be imposed, for it is only after the contract has been thus awarded, whereby the cost can be ascertained, that the commission is required by the eighth section of the same ordinance to impose a tax upon the owners of adjacent property 'equal in amount to the whole expense of the work.'   The object of advertising for these proposals is to attract bidders and induce competition, in order that the work may be done at the lowest attainable price, and this is all in the interest and for the protection of the taxpayers."

The bill further alleges and the demurrer admits that the performance of the contract with Reddington will, if not prevented by injunction, require an appropriation and expenditure by the city, out of the taxpayers money, of five thousand dollars for the grading and paving of the street, and that the assessments made by the city for that purpose upon the appellants property abutting on the street to be paved are onerous and that in addition thereto they will as taxpayers have to bear their share of the proportion of the cost of the paving to be paid out of the general tax levy.

Nor is there any question as to the appellants right to relief by injunction.   The right of property holders and taxpayers under similar circumstances to enjoin the performance by the public authorities of illegal contracts of this character has been so often upheld by us that it is only necessary to refer to some

of the cases in which it has been done without further discussion on the subject. Among such cases are *Holland v. Baltimore*, 11 Md. 197; *Baltimore v. Porter*, 18 Md. 301; *Baltimore v. Grand Lodge*, 44 Md. 445; *Baltimore v. Gill*, 31 Md. 394; *Baltimore v. Johnson, supra*; *Baltimore v. Keyser*, 72 Md. 105; *St. Mary's Industrial School v. Brown*, 45 Md. 310.

The decree appealed from will be reversed and the case remanded for further proceedings in conformity with this opinion.

> *Decree reversed with costs and case remanded for further proceedings in conformity with this opinion.*