## J. HOLMES WHITELEY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Street Opening in Baltimore City—Map Showing Building to be Taken Need Not Include Portable Structure—Notice as to Time of Meeting of Commissioners— Title of Statute.*

Local Code, Art. 4, sec. 828, provides that before the passage of any ordinance by the Mayor and City Council of Baltimore, relating to the opening of any street, etc., notice shall be published, and there shall be filed in the office of the Commissioners, before the publication, a map which shall show the course of the projected street, and also the lots and buildings thereon which shall be taken or destroyed. The map filed in this case failed to show that on the line of the proposed street there was a portable schoolhouse erected by the municipality. *Held,* that since this structure was placed there temporarily, and was intended to be taken down and moved elsewhere in sections, it was not a building which would be taken or destroyed in the course of street opening, and it is no objection to the validity of the proceedings that this schoolhouse was not shown on the map.

The Act of 1908, Chap. 142, entitled "An Act to authorize the Mayor and City Council of Baltimore to publish notices in German newspapers," provided in its body that whenever the Mayor and City Council, or any official or agency thereof, shall be required by statute or ordinance to publish a notice in more than one newspaper, the municipality or official shall have the discretion to publish one of such notices in a newspaper printed in the German language. *Held* that the title of this Act does not create the impression that it applies only to notices to be published by the municipality itself and not to those published by officials of the city, such as Commissioners for Opening Streets, and does not mislead by suggesting that the Act was intended to authorize the publication in

German newspapers in addition to those already required by the statute, and that consequently the title of the Act is sufficient under Constitution, Art. 3, sec. 29.

When a notice published by the Commissioners for Opening Streets stated that the first meeting in connection with the opening of a certain street would be at 10 o'clock A. M. on a designated day, it is no objection to the validity of their proceedings that they certify that they met at 11 o'clock A. M. on that day.

*Decided June 23rd, 1910.*

Appeal from the Baltimore City Court (STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and URNER, JJ.

*William S. Bryan, Jr.,* for the appellant.

*Albert C. Ritchie* (with whom was *Edgar Allan Poe,* City Solicitor, on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court overruling a motion to quash and set aside the proceedings to open Thirtieth street in the City of Baltimore through certain property in which the appellant has an interest. The appellant relies on three grounds in the motion. which we will consider in the order therein named.

1. The first reason assigned is that the ordinance under which the proceedings were taken is void, because the preliminary plat filed in the office of the Commissioners for Opening Streets prior to the passage of the ordinance did not have on it a schoolhouse which belonged to the city. Section 828 of Article 4 of Code of .Public Local Laws provides that before the Mayor and City Council of Baltimore shall pass

any ordinance under section 6 of that Article, paragraph "Streets, Bridges and Highways," relating to laying out, opening, etc., any street, square, lane or alley, notice shall be given by advertisement published once a week for six consecutive weeks in two daily newspapers in said city that application will be made for the passage of such ordinance; and notice shall also be given by filing in the office of the Commissioners for Opening Streets on or before the first day of such publication a map as described therein, "which, in case of laying out, opening, extending, widening or straightening, shall show the course and the lines of the projected improvement, and also the lots and buildings thereon which shall be taken or destroyed, in whole or in part."

The plat in this case was filed on May 20th, 1907, and the first publication of the advertisement was on December 20th of that year. An agreed statement of facts filed in the case shows that the schoolhouse referred to "was not a permanent schoolhouse, that it was no part of the permanent improvement in the neighborhood of Thirtieth street, but was a portable schoolhouse, movable from place to place as the exigencies of the School Board required." It is admitted it was not near Thirtieth street on or before May 20th, 1907, but was moved partially on the bed of that street in the early part of December, 1907, and when the final, "damage and benefit plat" was prepared the schoolhouse was in place as shown on that plat. It is movable by taking it to pieces and moving it from place to place in sections, and then the sections are put together. It "simply rests upon the ground, and has no foundations whatever."

Regardless of the fact that the schoolhouse belonged to the city, such a building is not within the meaning of the charter. It was not to be, "taken or destroyed, in whole or in part," in the sense that provision is used. The agreed statement says: "Said schoolhouse is not to be taken in any way in connection with the Thirtieth street opening, but when the work begins it will be moved elsewhere." It is therefore admitted

that it was not to be "taken," and it certainly will not be "destroyed," in whole or part, when it is only to be taken apart and put together again, as such a building is intended to be. The only possible loss or inconvenience which the city might sustain would be that it might be necessary to remove it sooner than it would have been moved if the street was not to be opened, but it can scarcely be contended that such expenses should be allowed in a proceeding of this character, where one department of the city government (Department of Education) placed the temporary structure there after the map had been filed with another department. The charter expressly recognizes the filing of the map as *notice,* and it must at least be held to be such notice to the city and its various departments as would deprive it, or any of them, of compensation for expenses incurred in moving it under the circumstances shown by this record.

But in addition to that, it could not have been intended that placing a temporary structure of such character as this is on the limits of a proposed street, after the map was filed, could invalidate the proceedings because that preliminary map did not contain the structure. It could not have shown it on May 20th, 1907, for the simple reason that it was not there to be shown. If such an omission could defeat proceedings of this character, the city authorities would be required to keep a lookout for portable buildings up to the very time the map is filed, and if placing such a structure there after the preliminary map had been filed would invalidate the proceedings, why would not placing it there after the publication of the notice in the newspaper, but before the assessment of damages and benefits? If such a construction be given this requirement of the charter, it would be an easy way for those opposed to such improvements to obstruct and defeat them, for publishing the notice and filing the map are undoubtedly conditions precedent to passing a valid ordinance for the opening of a street. *Baltimore* v. *Grand Lodge,* 44 Md. 436; *Burke* v. *Baltimore,* 77

Md. 469. So without giving other reasons, we cannot adopt the contention of the appellant as to that question.

2. The next ground relied on is that the Commissioners for Opening Streets did not give thirty days' notice in·two daily newspapers published in the English language before the first meeting to execute the ordinance, but only inserted it in one newspaper published in the English language, and in one published in the German language.

Section 829 provides that: "Before any Commissioners appointed by any ordinance of said corporation under the two preceding sections shall proceed to the performance of their duty, they shall give notice in at least two of the daily newspapers in the City of Baltimore of the object of the ordinance under which they propose to act, at least thirty days before the time of their first meeting to execute the same." This Court held in *Bennett* v. *Baltimore,* 106 Md. 484, that, "in the absence of a direction to the contrary the publication of a notice required by law to be made must be in the English language and in a newspaper printed in that language." That has since been followed in *Wannenwetsch* v. *Baltimore,* 111 Md. 32. After the decision in the *Bennett case* the Act of 1908, Chapter 142, was passed which is entitled "An Act to authorize the Mayor and City Council of Baltimore to. publish notices in German newspapers."

It is contended that that Act is a nullity because the title does not describe its subject, and is misleading. The body of the Act provides that whenever the Mayor and City Council of Baltimore, "or any official, officer, employe, agent or agency thereof," shall be required or authorized by any general or local law, or ordinance, to publish a notice of any description whatsoever in more than one newspaper, one of such newspapers, in the discretion of the said municipal corporation or of the said official, etc., may be one published in the German language, and such publication shall have the same validity in all respects as if such newspaper was published in the English language. It excepts from the operation

of the Act section 49 of Art. 4, which provides for the City
Collector giving notice in three newspapers, one of which
shall be in the German language, of sales of goods and chattels
for taxes.

It is said by the counsel for the appellant that the title
would "lead anyone reading it to suppose that the *municipal
corporation of Baltimore* was authorized by the Act to publish
notices, which were to be published *by the municipality itself*
in German newspapers," and that no one would have reason
to suppose from it that the Act applied to the action of City
officials such as the Commissioners for Opening Streets.   It
is true that the Act itself gives the authority to the corpora-
tion, "or any official, officer, employe, agent or agency there-
of," but it is difficult to understand how anyone reading the
title could have supposed that it was only intended to au-
thorize the publication in German newspapers of such notices
as were given in the corporate name, and not those given for
the benefit of the corporation in the name of some official or
officials, through whom it does and must act.   The corpora-
tion can only act through some "official, officer, employe,
agent or agency."   Section 31 of the Charter provides that
"The executive power of the Mayor and City Council of
Baltimore shall be vested in the Mayor, the departments, sub-
departments, municipal officers not embraced in a department
herein provided for, and such special commissioners or boards
as may hereafter be provided for by laws or. ordinances not
inconsistent with this article."   There are a number of execu-
tive departments and sub-departments, and one of the sub-
departments of the Department of Review and Assessment is
the Commissioners for Opening Streets.   The legislative de-
partment of the corporation is vested in the City Council
(section 209).   Amongst the powers expressly granted the
Mayor and City Council of Baltimore is the one providing
for laying out, opening, extending, widening, straightening
or closing up, in whole or in part, streets, squares, lanes and
alleys (section 6).   The Commissioners for Opening Streets

"shall be charged with the duty of opening, extending, widen-
ing, * * * any street, lane, alley or part thereof situated in
Baltimore City whenever the same shall have been directed
by ordinance to be done, and shall perform such other duties
as the Mayor and City Council of Baltimore may by ordi-
nance prescribe" (section 172). The Charter gives certain
directions, but the foundation of their proceeding at all in
such work must be an ordinance of the Mayor and City
Council.

There must be very few notices given in the name of the
corporation, and there are probably as many if not more, given
by the Commissioners for Opening Streets than by any other
department or agency, and it seems to us that anyone see-
ing this title ought to have known that it was intended to do
just what was done by the body of the Act, and not to make
the law applicable simply to publications in the name of the
municipality. Especially is that true when it is remembered
that *Bennett's Case* was decided on November 13, 1907, and
it was a character of case which was likely to be noticed by
the public press and to attract public attention. The Act
was passed by a Legislature already elected when *Bennett's
Case* was decided, was approved by the Governor on March
25th, 1908, and it was undoubtedly passed by reason of the
decision in that case, the advertisement in which was not in
the name of the municipality. When, then the members of
the Legislature heard the title, or others saw it, it is almost
inconceivable to suppose that any of them could have been
deceived or misled by it.

It cannot properly be said that the Commissioners for
Opening Streets were not acting on behalf of or as agents for
the City, but as separate public functionaries. If there could
be any doubt about that, the case of *Central Savings Bank
v. Baltimore*, 71 Md. 515, ought to solve it. That was an
appeal from a motion to quash the proceedings of the Com-
missioners for Opening Streets in widening and extending
Douglass street. After referring to the requirement to give

notice before their first meeting to execute the ordinance, JUDGE BRYAN, in speaking for the Court, said: "With this limitation on the power of Commissioners to act, the whole subject of the assessment of damages and benefits is under the control of the Mayor and City Council, with the right reserved of a jury trial to the parties interested. *But the corporation exercises its functions through officers.* And this particular corporate power is exerted by means of a Board of Commissioners; and the acts of these Commissioners are in no respect personal, but to every intent and purpose official; *they are the acts of the corporation.* The Commissioners perform such duties in the execution of the corporate business as the corporation assigns to them." It cannot be doubted that the Commissioners for Opening Streets, like other officers who might be mentioned, act for the corporation as its agents, and, although the body of the statute mentioned a number of them, such officials as the Commissioners for Opening Streets could have advertised in a German newspaper if the words "or any official, officer, employe, agent or agency thereof" had been omitted, because the corporation would have been doing so through them, its officials or agents, upon whom such duties are imposed.

Nor do we think that the title is misleading, by way of suggesting that it was only intended to authorize the publications in German newspapers *in addition to* those already required. There is no suggestion in the title that the Act was to be thus limited; on the contrary, there was ample in it to inform the public that the subject to be dealt with in the body of the Act was the publication of notices by the City (and as we have said that included those acting for the City in such matters as required such publications) in German newspapers. For the particulars those interested must look to the body of the law, *but the subject* was sufficiently described in the title.

As we are of the opinion that there is no difficulty about the statute on the ground being considered, it would serve no

good purpose to discuss, or even cite, any of the many decisions on the provision of the Constitution relied on.   It is sufficient to say that none of them are in any way in conflict with the conclusion we have reached, but some might well be cited, if necessary, which have sustained titles which are much more meager than this, and some by which there was a great deal more danger of misleading the Legislature and the public than the one now before us.

3. The third objection is based on the ground that the notice stated that the first meeting of the Commissioners would be June 24th, 1908, at ten o'clock A. M., while they certified that they met on June 24th, 1908, at eleven o'clock A. M.   How that could affect the validity of the proceedings, or injure the appellant, is not pointed out.   There might possibly be some injury if a notice be given that these, or other officers, would meet at 11 A. M., but they met at 10 A. M. and then took some action before those interested arrived, although they wanted to be present; but it would be a very unusual, if not impossible, instance for anyone to be injured by reason of an hour's delay in such a meeting.   It is not suggested that there was any injury done the appellant, and if the proceedings could be set aside for an hour's delay, why not for half an hour, or even less?   No authority has been cited to susatin that, excepting a reference to *Dillon on Municipal Corporations,* to show that it was essential to the validity of the action of the Commissioners that it should be in accordance with the terms of the grant of power to them. Of course, that will not be denied, but meeting one hour after the time advertised was not such a departure from the notice as to injure anyone, or affect the proceedings   The Appeal Tax Court is required to give notice, by written or printed summons, to an owner of property before it can increase his assessment, or add any new property not already assessed, but if it gives notices to a number of owners to appear at the same hour, those who are not heard until an hour or two later could hardly sustain an objection to the

assessment on that ground. It may be that the Commissioners were otherwise occupied at ten o'clock, and until eleven, and gave in their return the exact hour they did meet to act in this matter; but whether that be so or not, or whether it was a mere mistake in mentioning the time in the certificate, the delay of an hour cannot invalidate the proceedings—certainly not without some possible injury being shown.

Being of the opinion that none of the reasons assigned were sufficient to justify it in quashing the proceedings, we will affirm the order of the lower Court.

> *Order affirmed, the appellant to pay the costs.*